(No. 51821.—

YOUNGSTOWN SHEET & TUBE COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION et al. (John Kristovic, Appellee).

*Opinion filed April 18, 1980.—Rehearing denied May 29, 1980.*

Rooks, Pitts, Fullagar & Poust, of Chicago (Daniel P. Socha and Frank C. Rowland, of counsel), for appellant.

Edward R. Vrdolyak, Ltd., of Chicago (Michael C. Brander, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This appeal concerns the jurisdiction of the Illinois Industrial Commission over a claim filed under the Workmen's Compensation Act for an injury sustained by an employee while working in Indiana. The arbitrator found there was no employment relationship subject to the provisions of the Illinois act and granted the employer's motion to dismiss the application for adjustment of claim

for lack of jurisdiction. The Industrial Commission reversed and remanded. On remand, the arbitrator entered an award under section 8(e) of the Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.8(e)). The award was affirmed by the Industrial Commission, and the Cook County circuit court confirmed. The employer, Youngstown Sheet & Tube Company (hereinafter Youngstown), appeals directly to this court under our Rule 302(a). (73 Ill. 2d R. 302(a).) The only issue before this court is whether the Illinois Industrial Commission had jurisdiction over the claim under the Illinois Workmen's Compensation Act.

On July 11, 1951, John Kristovic, an Illinois resident and a member of local 1008 of the United Steelworkers of America, was employed as a patcher in the coke-ovens department at Youngstown's South Chicago plant in Illinois. His responsibilities as a patcher included the brick work on the ovens. In February of 1961 the South Chicago plant was permanently shut down. Kristovic received a slip from Youngstown which was dated February 14, 1961, and was entitled "Notice of Change in Employment Status." The slip indicated that he had been "laid off" due to a "reduction in force." Kristovic looked for new employment. He also applied for, and received, unemployment compensation through the State of Illinois. Approximately three months later, Kristovic received a letter from Youngstown's employment supervisor advising him to report for a job interview. He interviewed at the Indiana Harbor Works plant in Indiana and was hired on a quasi-probationary basis as a laborer in that plant. Kristovic underwent an employment medical examination, received a new employee identification number, filled out the necessary documents for the Indiana State income tax and joined local 1011 of the United Steelworker's union in Indiana. Kristovic did not work in the coke-ovens department when he was first employed in Indiana. Instead, he worked as a laborer in the bridge shop. After a

period of time, he was promoted from quasi-probationary to permanent status and was assigned to the coke-ovens department. Due to his "continuous service," as defined in the United Steelworker's contract, Kristovic retained his company seniority; that is, his pension and vacation rights were calculated back to the date of original hire in Illinois. He did not, however, retain his departmental or unit seniority. In September of 1975, however, a consent decree was entered by the United States district court against Youngstown, eight other steel companies, and the United Steelworkers of America which abolished the system of departmental seniority. Thus, by virtue of the consent decree, the employee's seniority in the department pool was made to coincide with his total years of service with the company. Kristovic, therefore, gained seniority as a result of this decree in 1975.

At the time of the accident, Kristovic worked as a heater helper and had been employed at the Indiana plant almost 12 years. On April 8, 1973, while in the performance of his duties, Kristovic fell into a coke oven. Notice of the accident was filed with the State of Indiana in accordance with the Federal Occupational Safety and Health Act. Kristovic was unable to return to work until November 1, 1973. He received $63 per week for each week that he was unable to work. The payments were made by Youngstown pursuant to the compensation agreement between Youngstown and Kristovic entered into in accordance with the workmen's compensation laws of Indiana.

On January 29, 1974, Kristovic filed an application for adjustment of claim with the Industrial Commission of Illinois. At the hearing before the arbitrator, counsel for Youngstown filed a motion to dismiss. The employer asserted that Illinois lacked jurisdiction to hear the merits of the claim since (1) Indiana had assumed jurisdiction and (2) the employment relationship was centered in

Indiana. In support of its position, Youngstown offered into evidence, *inter alia,* the Indiana workmen's compensation order governing Kristovic's compensation payment and a certification from the chairman of the Indiana Industrial Board regarding the authenticity of said order. The certification stated that the order "represents that said Board has assumed jurisdiction over this matter."

Kristovic, as an adverse witness, and Andy Kalapach, assistant supervisor for employment at Youngstown's Indiana Harbor Works plant, testified for Youngstown at the arbitration hearing on the motion. In addition to the facts set forth above, Kalapach stated that Kristovic, as a "laid-off" employee, had no rights beyond those which were granted in the union contract. Kalapach stated that such rights were enforceable only in the event that he again became a permanent employee within two years after the layoff. Since Kristovic was absent from work for only three months and had again become a permanent employee of the company within two years, he retained his pension and vacation rights by virtue of the union contract. Kalapach further testified that the management personnel of Youngstown had decided to offer available positions at the Indiana Harbor Works to qualified former South Chicago employees. However, since the South Chicago employees had no right to employment at the Indiana plant, Kalapach testified that such employees were not automatically hired. In order to obtain employment at the Youngstown Indiana Harbor Works plant, the prospective employee was first required to interview with a representative of the personnel office. If he was considered eligible for employment by said office, the prospective employee then proceeded to a department supervisor for an additional interview. This interview would be for a particular job which was available within that department. The department supervisor would then inform the personnel office as to his decision regarding the hiring.

In a case where the department supervisor found the interviewee unacceptable for employment, there would be no hiring. Instead, the interviewee would be required to participate in further interviews with department supervisors until hired. If there were no other positions available within the departments, the person seeking employment was advised by the personnel department to keep in touch in the event that such vacancies did arise.

The sole question to be decided is whether Kristovic's accidental injury falls within the coverage of the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138 *et seq.*). The title of the Act reads, in pertinent part, as follows: "An Act to promote the general welfare of the people of this State by providing compensation for accidental injuries or death suffered in the course of employment within this State, and without this State where the contract of employment is made within this State ***." The Act provides that an "employee" includes "[e]very person *** whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois ***." (Ill. Rev. Stat. 1971, ch. 48, par. 138.1(b)(2).) It is apparent from a reading of the above that an out-of-State injury falls within the Act where the contract of employment was made in Illinois. (See *M.W.M. Trucking Co. v. Industrial Com.* (1976), 62 Ill. 2d 245, 254; *Morris v. Industrial Com.* (1973), 55 Ill. 2d 563, 564; *Severin v. Industrial Com.* (1936), 363 Ill. 217, 219.) (See generally, 4 Larson, Workmen's Compensation sec. 87.11, at 16—48 to 16—49 (1979).) Thus, the place-of-contract test, as stated by the legislature, will be applied to the facts of this case.

It is the position of Youngstown that the employment contract governing the relationship of the parties at the time of the injury was made in Indiana. It is the employee's position that the Illinois contract of employment continued to control the relationship of the parties.

Kristovic contends that he was merely suspended from work and that the resumption of employment in Indiana stemmed from the original contract of hire entered into in Illinois. He asserts that his retention of seniority rights evidences the continuity of his employment. For the reasons stated herein, we find that the employment contract governing the relationship between Kristovic and Youngstown at the time of the accident was made within the State of Indiana and, therefore, that the Illinois Industrial Commission was without authority to enter an award under the Illinois Workmen's Compensation Act.

Although Kristovic's termination slip reflected that he was "laid off," the situation was not a temporary cessation of employment with an expectation of eventual return. (See *Conner v. Phoenix Steel Corp.* (Del. 1969), 249 A.2d 866, 869.) Since the plant was permanently closed in 1961, there could not have been a resumption of employment. Kristovic's conduct subsequent to the receipt of the termination slip reflected his recognition of the demise of the employment relationship at the South Chicago plant; he immediately applied for unemployment compensation and sought work elsewhere. While there is no dispute that Kristovic regained his seniority rights upon reemployment, this resumption of status arose only from the provisions of the union contract and the Federal consent decree. The union contract represents an agreement as to those terms that will govern the hiring, work and pay of the members of a union. (*J.I. Case Co. v. National Labor Relations Board* (1944), 321 U.S. 332, 334-35, 88 L. Ed. 762, 766, 64 S. Ct. 576, 578-79.) The contract between the United Steelworkers of America and Youngstown did not therefore constitute an employment contract for each individual employee hired thereunder. Likewise, mere evidence of the Federal consent decree fails to elucidate the time or place of the creation of the particular employment relationship. We note that

the actual consent decree, which may have clarified this question, was not introduced into evidence. Thus, Kristovic failed to establish that he had a right to placement in the Indiana Harbor Works plant pursuant to the Illinois contract of employment. According to the uncontroverted testimony of Andy Kalapach, assistant supervisor for employment at the Indiana plant, Kristovic had no rights, subsequent to the South Chicago plant's closure, beyond those which were granted in the union contract. He also testified that the provision regarding the retention of vacation and pension benefits was effective only upon the reestablishment of the employment relationship which had terminated with the closure of the South Chicago plant.

We further conclude that, subsequent to the termination of the employment relationship in Illinois, a new contract of employment was entered into in Indiana. In *Kennedy-VanSaun Manufacturing & Engineering Corp. v. Industrial Com.* (1934), 355 Ill. 519, an award was entered by the Illinois Industrial Commission against both a New York corporation and its Illinois subsidiary for the death of an Indiana resident. The deceased was originally hired by the New York corporation and was later transferred to the Illinois company. Both companies appealed, claiming, *inter alia,* that the Illinois Industrial Commission lacked jurisdiction over either corporation. This court found that the employee's original contract of employment with the New York corporation was superseded by his transfer to the Illinois company. Accordingly, that part of the circuit court judgment confirming the award against the New York corporation was reversed and the portion of the judgment confirming the award against the Illinois company was upheld. For similar reasons, we conclude that Kristovic's original contract of employment was superseded by his employment by Youngstown's Indiana Harbor Works plant.

This is not a case where Kristovic was sent to Indiana to perform some work for his Illinois employer on a temporary basis. He had worked permanently in Indiana for about 12 years. Also, this is not a case where an Illinois employer transferred Kristovic to its place of business in Indiana. This case involves a cessation of employment in Illinois and a reemployment in Indiana with certain carry-over benefits derived from the contract between the parent company and the labor union.

The long-established rule in Illinois governing the making of contracts is that the place where the last act necessary to give validity to the contract is done is the place where the contract is made. (*Johnson v. Industrial Com.* (1933), 352 Ill. 74, 76.) It is unnecessary for this court to make the technical determination of the last act necessary to give validity to the contract, since the totality of the arrangements for reemployment occurred in the State of Indiana: the necessary documents for employment were executed in Indiana; the services to be performed ·were in Indiana; Kristovic accepted the offer of employment in Indiana and he received benefits, such as workmen's compensation, under Indiana law. Kristovic was required to participate in the interviewing procedure followed in the Indiana plant. He underwent a preliminary interview with the company and then interviewed with the department in which he sought employment. He also underwent a preemployment physical examination. Kristovic was, in fact, rehired and, as a new employee, he was given a new employee identification number. He also joined a different local of the union and filled out the requisite Indiana State tax documents. As noted above, he was not placed in a position comparable to that which he enjoyed at the South Chicago plant. Kristovic instead started as a laborer and did not have seniority beyond that which was granted pursuant to either the union contract or the Federal consent decree. The activi-

ties of the parties subsequent to the accident also indicate the propriety of Indiana jurisdiction over the claim. Notice of the accident was filed with the State of Indiana in compliance with the Federal Occupational Safety and Health Act, and for several months Kristovic received bimonthly payments under the Indiana workmen's compensation laws. These payments, in addition to the certificate executed by the chairman of the Indiana Industrial Board, indicate that Indiana had assumed jurisdiction of this case. In view of all of the above, we find that Indiana was the forum in which the pertinent employment contract was made. Our jurisdictional finding seems particularly appropriate in a case such as this, where the employee has not even worked in the State in which he is seeking relief for over 12 years. We hold, therefore, that the Illinois Industrial Commission lacked jurisdiction over this claim.

Since we have found Illinois to be lacking jurisdiction in the first instance, it is unnecessary for this court to discuss the applicability of the full-faith-and-credit provision of the United States Constitution to the exclusivity provision contained in Indiana's Workmen's Compensation Act. (Ind. Code Ann., sec. 22–3–2–6 (Burns 1974), formerly sec. 40–1206.) Specifically, we need not determine the viability of the case of *Cole v. Industrial Com.* (1933), 353 Ill. 415, in view of subsequent United States Supreme Court decisions such as *Carroll v. Lanza* (1955), 349 U.S. 408, 99 L. Ed. 1183, 75 S. Ct. 804.

We conclude that the Industrial Commission of Illinois was without jurisdiction in this case. Therefore, the judgment of the circuit court of Cook County, confirming the Industrial Commission's award, is reversed and the award is set aside.

*Judgment reversed;*
*award set aside.*