(No. 56622.

UNITED AIRLINES, INC., Appellee, v. THE INDUS-TRIAL COMMISSION *et al.* (Rogers Walker, Appellant).

*Opinion filed April 22, 1983.—Rehearing denied May 27, 1983.*

James Lewis Kaplan and Kathleen Boyle Anderson, of Kaplan, Sorosky & Hoffman, Ltd., and Stuart J. Strongin, all of Chicago, for appellant.

Wiedner & McAuliffe, Ltd., of Chicago (Richard J. Leamy, Jr., of counsel), for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Respondent, United Airlines, Inc., employed claimant, Rogers Walker, as a ramp serviceman at its San Francisco International Airport terminal. Claimant was allegedly injured on three occasions in the course of his employment in California and, on the basis of his initial employment period with respondent as a ramp serviceman at its O'Hare International Airport facilities in Chicago, filed for benefits under the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*). Follow-

ing a contested proceeding confined solely to the issue of whether the Industrial Commission possessed jurisdiction to award compensation, the arbitrator concluded that jurisdiction existed, and the Commission affirmed that decision on review. The circuit court of Cook County reversed, and claimant filed a notice of appeal to this court (73 Ill. 2d R. 302(a)).

Extensive testimony by claimant at the hearings before the arbitrator and the Commission revealed the following facts. Claimant, an Illinois resident, was first employed in Chicago as a ramp serviceman by respondent from April 1969 until July 1970, when he voluntarily left respondent's employ. He was rehired in the same position in April 1972. As a part of the hiring process on both occasions, respondent's personnel department required claimant to complete a short "screening" application, a formal employment application, and a general aptitude test, and to undergo a physical examination conducted by respondent's physician. In addition, he was photographed, fingerprinted, and required to fill out income tax and labor union forms. After a security investigation was satisfactorily concluded, respondent notified claimant that he could report to work, subject to a 90-day probationary period during which he could be summarily dismissed. Upon being rehired, claimant's seniority status began to accrue as of the April 1972 hiring date and did not include the earlier period.

Several years later claimant filed applications for a transfer to one of four different positions. The first available opening for a position requested by claimant was for that of mechanic's helper at San Francisco International Airport, and respondent granted his transfer request in February 1976. Claimant did not undergo the extensive processing conducted when he joined respondent's work force at O'Hare International Airport, but rather was required only to pose for a new photograph and was issued a

new membership card by the local union. The employee identification number assigned to claimant by respondent remained the same, as did his seniority status.

Claimant was given two weeks of training by respondent and worked for approximately two months as a mechanic's helper before he resumed work as a ramp serviceman. The record indicates that transferred employees are also subject to a 90-day probation period, but under the terms of the collective-bargaining agreement governing claimant's employment contract, individuals who change positions and fail to successfully complete the probationary period are apparently entitled to resume their former duties.

On September 30, 1976, and May 19, 1977, claimant was allegedly injured in the course of his employment. Temporary disability benefits were paid under California law, and applications for permanent compensation for those injuries are also pending in that State. Claimant also filed applications for adjustment of claims with the Illinois Industrial Commission and agreed with respondent to submit as the only issue in initial proceedings the question of whether his claims fell within the Commission's jurisdiction. As earlier noted, the arbitrator held that claimant's employment contract had been made in Illinois and that jurisdiction existed, and that decision was affirmed by the Commission. Soon after the hearing held before the Illinois arbitrator, claimant filed a third claim based on an injury allegedly suffered on March 2, 1979, and the Commission determined that it also had jurisdiction over that matter. All claims were consolidated in the circuit court and reversed, because that court believed the spirit of this court's decision in *Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, required a conclusion that the Commission lacked jurisdiction.

The language of the Illinois Workmen's Compensation Act indicates, and the decisions of this court have recog-

nized, that the Act was designed to have an extraterritorial effect. Employees covered by the Act include "[e]very person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois ***" (Ill. Rev. Stat. 1975, ch. 48, par. 138.1(b)(2)). In addition, the title of the Act provides further evidence of its wide scope; the full title is "An Act to promote the general welfare of the people of this State by providing compensation for accidental injuries or death suffered in the course of employment within this State, and without this State where the contract of employment is made within this State; providing for the enforcement and administering thereof, and a penalty for its violation, and repealing an Act therein named." (Ill. Rev. Stat. 1975, ch. 48, par. 138.) This court has held that employment contracts made in Illinois are normally to be interpreted as including an agreement by the parties to be bound by the Act even when the contemplated employment is exclusively in other States. See *Johnston v. Industrial Com.* (1933), 352 Ill. 74; *Beall Brothers Supply Co. v. Industrial Com.* (1930), 341 Ill. 193; see also *Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, 430; *M.W.M. Trucking Co. v. Industrial Com.* (1976), 62 Ill. 2d 245, 254; *Morris v. Industrial Com.* (1973), 55 Ill. 2d 563, 564.

The circuit court's reliance upon *Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, for its holding that the Commission lacks jurisdiction in this cause is misplaced, as that decision is clearly inapposite upon its facts. Unlike the situation here, in which claimant's employment with respondent was continuous and uninterrupted at the time of his transfer, the claimant in *Youngstown* was permanently "laid off" from his position in an Illinois plant. Several months later, he learned of an opening at an Indiana plant operated by his former em-

ployer and, after comprehensive hiring procedures were completed at that plant, he worked there for approximately 12 years before suffering the injury for which he sought benefits under Illinois law. Under the circumstances present in that case, this court concluded that there was no contractual basis for applying Illinois compensation law because the claimant's Illinois employment contract had been terminated when his employment with the company had ended and that his new employment relationship was governed by a contract made in Indiana.

Similarly, respondent's citation of *Kennedy-VanSaun Manufacturing & Engineering Corp.* (1934), 355 Ill. 519, for the proposition that a transfer also operates to transfer the situs of the employment contract is unpersuasive in light of the different facts present in that case. There the employee was transferred from a position with a parent New York company to a subsidiary located in Illinois, and this court held that his former employment contract, made outside of Illinois, had been superseded by a new contract with a new employer made within Illinois and that the Commission therefore had jurisdiction over the matter.

Respondent also urges that we apply a theory of jurisdiction suggested by Professor Larson that jurisdiction over compensation issues should be present only where the employment relationship is centered, and that the situs of that relationship should be governed by rules similar to those governing questions concerning an individual's domicile. (4 A. Larson, Workmen's Compensation secs. 87.40 through 87.42 (1982).) An exclusive application of that theory, however, is not consistent with the contractual basis of jurisdiction specified by our compensation act, and any change therein will have to be legislatively mandated.

Determining the existence of jurisdiction necessarily involves a factual inquiry as well as an application of the

law. In their capacity as finders of fact, the arbitrator and the Commission found that the employment contract existing between claimant and respondent at the time of his injuries was made in Illinois. That finding is not contrary to the manifest weight of the evidence and must, therefore, be affirmed. (*Globe Cab Co. v. Industrial Com.* (1981), 86 Ill. 2d 354; *Morin Erection Co. v. Industrial Com.* (1980), 81 Ill. 2d 72; *Eagle Sheet Metal Co. v. Industrial Com.* (1980), 81 Ill. 2d 31.) We accordingly hold that the Industrial Commission has jurisdiction to entertain claimant's applications for adjustment of claims.

The judgment of the circuit court of Cook County is accordingly reversed, and the decision of the Commission confirmed.

*Circuit court reversed; Industrial*
*Commission confirmed.*

JUSTICE MORAN took no part in the consideration or decision of this case.

JUSTICE SIMON, dissenting:

Under the majority's interpretation of section 1 of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1(b)(2)) a worker who has been permanently reassigned from Illinois to another State and who has worked in that State for many years is nevertheless entitled to claim workmen's compensation in Illinois provided that he initially was hired in Illinois and briefly worked here. I do not believe that the legislature ever intended this strange result, and I fear that the majority opinion will tend to diminish the confidence that both employers and employees have in the fairness and rationality of the workmen's compensation remedy for work-related injuries. Although the respondent in this case did not raise the issue, I also note that it is an open question whether assumption of jurisdiction over this type of employment relationship by Illinois comports with the "significant contacts" require-

ment of the due process clause. See *Allstate Insurance Co. v. Hague* (1981), 449 U.S. 302, 66 L. Ed. 2d 521, 101 S. Ct. 633.

The Illinois workmen's compensation remedy is only available to persons who are "employees" as defined in the Act. The Act defines employees as "[e]very person in the service of another under any contract of hire, express or implied, oral or written, *including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois,* persons whose employment results in fatal or non-fatal injuries within the State of Illinois where the contract of hire is made outside of the State of Illinois, and persons whose employment is principally localized within the State of Illinois, regardless of the place of the accident or the place where the contract of hire was ***." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 48, par. 138.1(b)(2).) The respondent admits that the claimant originally was hired under a contract "made within the State of Illinois." Respondent, however, contends that the claimant's permanent transfer to California divested the Illinois Industrial Commission of jurisdiction over the injuries suffered by the claimant in California.

The majority, relying on the language of the statute, concludes that the permanent transfer to California was simply a modification of the original Illinois employment contract. But the traditional rules of contract formation and modification, designed for use in a completely different context, have little relevance in deciding whether the Illinois Industrial Commission shall retain jurisdiction over the claim of a nonresident worker who has permanently transferred to another State. Even if these rules were applicable in deciding the question presented in this case, I believe that they support the respondent's position. When the claimant permanently transferred to the new job in California, the Illinois employment contract was dis-

charged and a new contract was established under California law. *Cf. McCluney v. Jos. Schlitz Brewing Co.* (8th Cir. 1981), 649 F.2d 578, 583 *aff'd mem.* (1981), 454 U.S. 1071, 70 L. Ed. 2d 607, 102 S. Ct. 624 (employee goes to work at brewer's Missouri plant in 1956; permanent transfer to North Carolina plant in 1970 and to Wisconsin plant in 1975 created new employment contracts and discharged the earlier Missouri employment contract).

In deciding this case, however, I would not rely, as the majority does, on the arcane rules of contract formation. Instead, I believe we should recognize that the purpose of the Illinois Workmen's Compensation Act is to permit a prompt and fair recovery for work-related injuries to workers with some substantial relationship to the State of Illinois. When an employee is permanently transferred to another State, I do not believe that anything in the Act requires that he retain a remedy in this State for work-related injuries suffered in his new State of residence.

Professor Larson proposes an "employment relation" test in such situations:

> "Of the three original theories on extraterritoriality—tort, contract, and employment relation—the last is the most relevant to compensation theory and the least artificial. In this view, the existence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay compensation.
>
> \*\*\* The big question under this theory is: What is meant by 'existence of the relation within the state?' The location of an injury is easy to identify; the location of a contract less so, but still subject to well-known legal rules; but the whereabouts of a relation between two people has a somewhat more mystic quality.
>
> The making of the contract within the state is usually deemed to create the relation within the state. The relation, having thus achieved a situs, retains that situs until something happens that shows clearly a tranference of the

relation to another state. This transfer is usually held to occur when either a new contract is made in the foreign state, or the employee acquires in the foreign state a fixed and nontemporary employment situs. The analogy to the law governing residence is apparent, with the old residence persisting until the new one becomes fixed. In some kinds of employment, like trucking, flying, selling, or construction work, the employee may be constantly coming and going without spending any longer sustained periods in the local state than anywhere else; but having rooted his status in the local state by the original creation of the relation there, he does not lose it merely on the strength of the relative amount of time spent in the local state as against foreign states. He loses it only when his regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison. This transference will never happen as long as his presence in any state, even including the original state, is by the nature of his employment brief and transitory." 4 A. Larson, Workmen's Compensation secs. 87.41, 87.42 (1983).

At least one State has adopted the "employment relation" test in this context. In *Poliquin v. DeSoto Kerns Co.* (1978), 118 N.H. 371, 386 A.2d 1287, the New Hampshire Supreme Court held that a worker was not entitled to file a workmen's compensation action in New Hampshire for an injury suffered in Texas. The New Hampshire statute provided that injuries suffered outside the State are compensable "if the contract of employment was made in [New Hampshire]." (N.H. Rev. Stat. Ann. (1977), ch. 281:13.) The worker had originally been hired by DeSoto to work in its New Hampshire plant. He worked in New Hampshire for five years and then applied for and received a voluntary transfer to DeSoto's California plant. After working for nearly a year in California, the worker was transferred to DeSoto's Texas plant, where he was injured several months later. The New Hampshire Supreme Court expressly approved of the test proposed by Professor Larson and observed that "plaintiff's employment in Texas was so unre-

lated and remote from the employer-employee relationship which arose in New Hampshire that [the New Hampshire jurisdictional provision for out-of-State injuries] was not intended to provide coverage for the Texas injury." 118 N.H. 371, 373, 386 A.2d 1287, 1289; see also *Phillips v. Oneida Motor Freight, Inc.* (1978), 163 N.J. Super. 297, 394 A.2d 891 (adopting Professor Larson's "employment relation" standard in a similar context).

The majority opinion contends that the "employment relation" inquiry proposed by Professor Larson, and adopted in New Hampshire, is not authorized by our statute. The New Hampshire statute, however, has virtually the same language as our own, and the New Hampshire Supreme Court had no difficulty adopting and applying this test in *Poliquin.* The question is essentially one of policy and comity: Why should Illinois retain jurisdiction over the claim of a nonresident worker who is injured out of State when that worker has voluntarily severed any relations he ever had with this State?

Adoption of the "employment relation" standard would be consistent with prior Illinois authority. We have interpreted the Workmen's Compensation Act as requiring an employment relation to Illinois before the Industrial Commission has jurisdiction over the work-related injuries of nonresident workers. In *Arnold v. Industrial Com.* (1960), 21 Ill. 2d 57, and *McLain Dray Lines v. Industrial Com.* (1969), 41 Ill. 2d 554, this court held that the Illinois Industrial Commission does not have jurisdiction over the claim of a nonresident employee who was injured in Illinois but who only had a brief and transitory relationship with this State. Although the worker's accident occurred in Illinois in the course of his employment as a truck driver and his claim thus appeared to be covered by the automatic-coverage provisions in section 3 of the Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.3(3) (carriers by land automatically covered under the Act)), this court held in *Arnold* that "[i]t is evident ***

that in determining whether the act applies, the presence of some connection between Illinois and the employment relationship, rather than the mere situs of the injury, is the significant factor." (21 Ill. 2d 57, 61.) The court held that the dismissal of the worker's claim was proper because nothing in the record "would give Illinois an interest in this employment relationship or the incidents thereof." 21 Ill. 2d 57, 62.

I would hold that the same "employment relation" requirement limits the Commission's jurisdiction to entertain the claims of nonresident workers who are injured out of State while working under a contract made in Illinois. The circuit court properly applied this standard, and I would affirm its holding that the Commission had no jurisdiction in this case. The claimant has permanently transferred his place of work to California. There is every indication that he intends to remain there indefinitely and has no intention of ever returning to Illinois. He has joined a local union, opened a local checking account, bought a house, sent his children to local schools, obtained a California driver's license, and filed income tax returns in the State of California. I also note that he has filed claims in California for workmen's compensation for two of the three injuries involved here.

Although our statute prohibits a double recovery (see Ill. Rev. Stat. 1975, ch. 48, par. 138.1(b)(2), see also *Goldblatt Brothers, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 141 (workers may initiate worker's compensation proceedings in other States while maintaining proceedings in Illinois as well, but may not recover twice for the same injury)), I do not see why we should allow the dockets of our Industrial Commission and our courts to be clogged by workmen's compensation claims by nonresident workers who have voluntarily severed any relation to this State. The claimant has a forum for his claim in California, and he should pursue it there; we should not permit him to shop here for a more favorable result.

CHIEF JUSTICE RYAN joins in this dissent.