TRANS WORLD AIRLINES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Willie Williams, Jr., Appellee).—TRANS WORLD AIRLINES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Marcelo Lara, Appellee).

First District (Industrial Commission Division)   Nos. 1—88—3659WC,
1—88—3660WC cons.

Opinion filed November 17, 1989.

---

*Justice Quinlan participated in this opinion prior to his resignation from the court.

Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellant.

Leonard L. Leon, John T. Bowman, of Murges, Bowman & Corday, Ltd., both of Chicago, and Edward J. Kionka, of Murphysboro, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Claimants, Willie Williams, Jr., and Marcelo Lara, sought workers' compensation benefits for injuries sustained while working for respondent, Trans World Airlines (TWA), in Pennsylvania and Missouri, respectively. In *Williams*, an arbitrator found jurisdiction under *United Airlines, Inc. v. Industrial Comm'n* (1983), 96 Ill. 2d 126, 449 N.E.2d 119, and for a back injury awarded him $258.29 per week for 64²/7 weeks as temporary total disability benefits, and $258.29 for 100 weeks for a 20% permanent partial disability. The Commission also found jurisdiction and affirmed the arbitrator's decision.

In *Lara*, an arbitrator found jurisdiction and for a head and neck injury awarded him $320 per week for 31¹/7 weeks as temporary total disability benefits, and $282.25 per week for 150 weeks for a 30% permanent partial disability. The Commission, with one dissenting member, found jurisdiction and affirmed the arbitrator's decision.

The circuit court found that the Commission had jurisdiction in both cases, since the Illinois employment contract had not ended. The court confirmed the Commission's decisions as to jurisdiction and permanent disability, but set aside the *Williams* temporary disability award and remanded with instructions to review the parties' stipulation and enter a finding and decision in accordance with the stipulation.

On appeal, TWA contends in both cases that the Commission erred in finding Illinois jurisdiction where claimants had been permanently transferred out of State, and that the finding of Illinois juris-

diction violates the due process clause, enforces an Illinois police statute extraterritorially, and thereby interferes with commerce among the States. The two cases have been consolidated on appeal.

Williams testified that on July 5, 1977, he began working for TWA at O'Hare Airport as a ramp serviceman. Prior to that, TWA interviewed Williams three times. He filled out an application; underwent a physical examination; attended an orientation talk; attended a training class; was fingerprinted, photographed and bonded; was issued an identification badge and an airport driver's license; was issued an employee identification number; and became a member of the union.

On August 19, 1979, J.W. Cyr, manager of ground services for TWA at O'Hare, wrote to Williams, advising him that "a reduction in manpower requirements makes it necessary to furlough you from your present position." He was directed to the union agreement's provisions regarding displacement rights and was instructed to keep TWA advised of his current address. Williams requested a displacement in Pittsburgh and several other cities. Williams testified that had he not accepted the transfer, he would not have been able to continue working for TWA at O'Hare because they were cutting back personnel.

On August 30, 1979, Cyr wrote to Williams that he was to begin working in Pittsburgh:

> "Pursuant to your request to exercise your system displacement rights, it has been determined that a less senior employee exists at [Pittsburgh]; the point you selected. Your last day of work at O'Hare remains September 5, 1979. You are to report to G. Long, Manager-Ground Services at Pittsburgh. The report date is September 6, 1979."

Williams began work in Pittsburgh on October 7, 1979, following a medical leave of absence.

In Pittsburgh, Williams filled out State tax forms. He was issued a Pittsburgh airport driver's license. He became a member of a different local union. He was issued new clothing. He was not fingerprinted or photographed; he did not receive a new identification badge; he did not take a physical examination; and he had no interview. Williams retained his seniority status. He did not receive any new training, and he performed the same basic functions. His family did not move to Pittsburgh. They remained in Chicago, where Williams visited them. Williams retained other personal contacts in Illinois.

On February 12, 1981, Williams was advised by TWA that he was again being "furloughed from [his] position with" TWA due to a reduction in force. He was again referred to his union displacement

rights and was instructed to advise personnel "of any address changes so that we may reach you in the event re-employment opportunities arise." Williams indicated on a form that he wished to take a local furlough as of March 1, 1981.

On February 18, 1981, however, Williams injured his back at work in Pittsburgh. In March 1981, Williams moved back in with his wife and child in Chicago. He continued to receive medical treatment in Chicago. Williams received Pennsylvania workers' compensation benefits. TWA and Williams have stipulated to the period of lost time, wages earned, and benefits paid.

In Lara's case, Leo E. Spoileder testified for Lara that he was a union committeeman representing the employees in a collective bargaining agreement. The agreement, effective October 31, 1978, until June 1981, covered TWA's domestic employees, including ramp servicemen and mechanics. The seniority system provides that if the employee should be furloughed or if the company determines there is a lesser number of employees needed in one area or another, the employee has the right to exercise seniority either by displacing a junior employee, or by taking a layoff "and go to the street." If he chooses to displace, he can go anywhere in the United States where TWA has employees and exercise seniority. He is assured of a job before he leaves Illinois. When he gets to the new locality, he reports to a supervisor designated by TWA in a letter. He is not treated as a new employee by TWA. No interview is required; no physical examination is required; he cannot be denied employment at TWA's discretion; and he retains all seniority, pension and vacation rights. There is no interruption in his employment service with TWA. If a position in his classification opens up, he can transfer back to O'Hare.

Lara testified that he was hired by TWA at O'Hare on May 5, 1979, as an aircraft mechanic. On March 17, 1981, his supervisor, Roy S. Davis, gave Lara a letter of furlough. It stated: "[D]ue to a reduction of flight activity at O'Hare, this is to advise that you will be furloughed from your present job classification of Aircraft Mechanic, at the end of your shift on Sunday, April 05, 1981. You are requested to advise this office, in writing, no later than three /3/ work days of this notification, the point(s) on the system you wish to exercise your seniority. It is suggested you review the union contract regarding your rights during a reduction in force."

On March 26, 1981, Lara wrote to Davis: "After receiving my furlough letter, I have decided to displace to St. Louis as an aircraft mechanic. I would also like to have my recall rights back to Chicago as an aircraft mechanic."

On March 30, 1981, Davis wrote to Lara:

"As a result of your right to exercise your mechanic seniority, this is to advise that will [sic] transfer to St. Louis, as an Aircraft Mechanic. Since you will be on vacation the week of March 30, 1981, you are requested to report to Mr. E. Sasseen, Manager-Maintenance, at 0730 hours on Thursday, April 09, 1981.

Prior to leaving Technical Services at O'Hare, you are required to clean out your personal locker, return all items on loan back into Stores, return the city of Chicago security badge and remove the ORD sticker from your vehicle(s).

If there is anything I can do for you during this transition period, please do not hesitate contacting me at any time."

Lara testified that before he left O'Hare for St. Louis, he was assured of a job. When he arrived in St. Louis, he introduced himself to the general foreman of TWA and was put to work right away. He was not interviewed; nor did he have a physical examination. He had exercised his recall rights and intended to transfer back to Chicago if anything opened up.

On June 3, 1981, Lara was injured in an accident at work in St. Louis. The wheel well snapped shut on his neck. He suffered a skull fracture, facial lacerations and neck contusions. He was hospitalized several weeks. He returned to Chicago in late June 1981, where he continued to receive medical care. Lara received Missouri workers' compensation benefits, for which the Illinois arbitrator gave credit to TWA. On January 28, 1982, Lara returned to his regular work in St. Louis. At the hearing, he was still working in Missouri and still commuting to Chicago to stay with his family.

■■■ TWA contends that the Commission erred in finding an Illinois employment relationship conferred jurisdiction upon it. The Illinois Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 et seq.) has an extraterritorial effect. (United Airlines, Inc. v. Industrial Comm'n (1983), 96 Ill. 2d 126, 449 N.E.2d 119; F & E Erection Co. v. Industrial Comm'n (1987), 162 Ill. App. 3d 156, 514 N.E.2d 1147.) The Act covers employees who are "in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois." (Ill. Rev. Stat. 1981, ch. 48, par. 138.1(b)(2).) The issue is a question of fact for the Commission. (United Airlines, Inc. v. Industrial Comm'n (1983), 96 Ill. 2d 126, 449 N.E.2d 119; F & E Erection Co. v. Industrial Comm'n (1987), 162 Ill. App. 3d 156, 514 N.E.2d 1147.) The

place where the last act necessary to give validity to the contract occurs is the place where the contract is made. (*Youngstown Sheet & Tube Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 425, 404 N.E.2d 253.) We need not rely solely on a technical determination of the last act necessary to give validity to the contract. The Commission may look to where the totality of the arrangements for reemployment occurred. *Youngstown Sheet & Tube Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 425, 404 N.E.2d 253; *United States Steel Corp. v. Industrial Comm'n* (1987), 161 Ill. App. 3d 437, 510 N.E.2d 452.

In *United Airlines*, the court held that Illinois had jurisdiction after reviewing numerous factors which might indicate where the totality of the arrangements for reemployment occurred. There, the employee requested a voluntary transfer from Illinois to California. Upon transferring, he did not undergo the same extensive hiring process he had undergone when originally hired in Illinois. His employee identification number remained the same, as did his seniority status; and if he failed to successfully complete a 90-day probation period in California, he had the right to resume his former duties in Illinois. Within two years of his transfer, he was injured.

In reviewing similar factors here, we find the facts supporting Illinois jurisdiction even stronger than in *United Airlines*. Both Lara and Williams worked continuously for TWA, with the only interruption being regular vacation and medical absence. (See *United Airlines*, 96 Ill. 2d 126, 449 N.E.2d 119 (Illinois jurisdiction where employment continuous); *cf. Youngstown Sheet & Tube Co.*, 79 Ill. 2d 425, 404 N.E.2d 253 (no Illinois jurisdiction where three months' unemployment and seeking work elsewhere interrupted Illinois and Indiana employment).) Both Lara and Williams were told by TWA they had to either request a transfer or accept a mandatory furlough or layoff. TWA then instructed them by letter to report, immediately after the last day of work in Illinois, to the new State, even identifying the new supervisor to whom they were to report for initial work duties. Williams was instructed that his last work day at O'Hare was September 5, 1979, and he was "to report to *** Pittsburgh. The report date is September 6, 1979." Lara was instructed that following his vacation he was to report to St. Louis on April 9, 1981.

Lara's instructions included the comment that he should contact his Illinois supervisor authoring the letter if there "is anything I can do for you during this transition period." Thus, there was no cessation of employment, merely a transition between two supervisors or locations. Consistent with this construction, Spoileder testified that the transferring employee is assured of a job before he leaves Illinois.

When he arrives at the new locality, he simply reports to the designated supervisor. He is not treated as a new employee by TWA. He cannot be denied employment at the discretion of TWA. Williams, for example, did not receive new training in Pittsburgh and performed the same basic duties as he performed in Chicago. Lara reported to the St. Louis supervisor and began work.

In addition, the transfer of Lara and Williams was not permanent, since they retained rights of recall and TWA continued operating out of O'Hare airport in Chicago. In fact, in order to assure TWA's ability to recall the employee to Illinois when a job opened up again, TWA wrote to both claimants that they must keep the personnel office advised of any address changes. See *United Airlines*, 96 Ill. 2d 126, 449 N.E.2d 119 (Illinois jurisdiction where employee retained right to return to Chicago); *cf. Youngstown Sheet & Tube Co.*, 79 Ill. 2d 425, 404 N.E.2d 253 (no Illinois jurisdiction where Illinois plant permanently shut down, no temporary cessation of work); *United States Steel Corp.*, 161 Ill. App. 3d 437, 510 N.E.2d 452 (no Illinois jurisdiction where Illinois plant ceased operation, and employee permanently barred from expectation of eventual return to Illinois).

Furthermore, Lara and Williams both accepted the out-of-State assignments while still working for TWA in Illinois. (*Cf. Youngstown Sheet & Tube Co.*, 79 Ill. 2d 425, 404 N.E.2d 253; *United States Steel Corp.*, 161 Ill. App. 3d 437, 510 N.E.2d 452 (no Illinois jurisdiction where employees accepted new jobs while in Indiana).) TWA guaranteed Lara and Williams the out-of-State job assignments. *Cf. Youngstown Sheet & Tube Co.*, 79 Ill. 2d 425, 404 N.E.2d 253; *United States Steel Corp.*, 161 Ill. App. 3d 437, 510 N.E.2d 452 (no Illinois jurisdiction where out-of-State jobs not guaranteed).

Additionally, neither claimant was required to be interviewed at the new jobsites. (*Cf. Youngstown Sheet & Tube Co.*, 79 Ill. 2d 425, 404 N.E.2d 253; *United States Steel Corp.*, 161 Ill. App. 3d 437, 510 N.E.2d 452 (no Illinois jurisdiction where employees had interviews at new jobs in Indiana).) Neither employee was required to undergo a physical examination at the new jobsite. (*Cf. Youngstown Sheet & Tube Co.*, 79 Ill. 2d 425, 404 N.E.2d 253; *United States Steel Corp.*, 161 Ill. App. 3d 437, 510 N.E.2d 452 (no Illinois jurisdiction where employees required to undergo physical examinations at new jobs in Indiana).) Lara testified he did not receive a new identification badge in Pittsburgh; both employees merely received new airport drivers' licenses. (*Cf. Youngstown Sheet & Tube Co.*, 79 Ill. 2d 425, 404 N.E.2d 253; *United States Steel*, 161 Ill. App. 3d 437, 510 N.E.2d 452 (no Illinois jurisdiction where employees received new employee identifica-

tion numbers at Indiana job sites).) Finally, both claimants were injured within a relatively short period of time after transferring. Lara was injured within two months, while Williams was injured within 16 months of his transfer. See *United Airlines*, 96 Ill. 2d 126, 449 N.E.2d 119 (Illinois jurisdiction where employee injured within two years of transfer; *cf. Youngstown Sheet & Tube Co.*, 79 Ill. 2d 425, 404 N.E.2d 253 (no Illinois jurisdiction where employee injured 12 years after transfer); *United States Steel Corp.*, 161 Ill. App. 3d 437, 510 N.E.2d 452 (no Illinois jurisdiction where employee injured 20 years after transfer).

■■ We conclude that the record reveals overwhelming evidence to support the Commission's finding of Illinois jurisdiction. While Lara's work injury occurred in Missouri and Williams' work injury occurred in Pennsylvania, their contracts of hire were made in Illinois. The totality of arrangements for their change in employment conditions occurred in Illinois. The Commission had jurisdiction to entertain claimants' application for adjustment of claims.

■ TWA relies on the fact that the employees, upon leaving Chicago, had to return their O'Hare driver's licenses and parking stickers, and O'Hare uniforms. It would make little sense to use O'Hare insignia at St. Louis or Pittsburgh airports. This evidence fails to sufficiently undermine the other evidence presented here to compel a finding that the totality of arrangements for reemployment took place outside Illinois. Similarly, the fact that the claimants filled out tax forms in the new States does not alter our conclusion. Missouri's and Pennsylvania's payment of worker's compensation benefits also fails to preclude Illinois jurisdiction. See *United Airlines*, 96 Ill. 2d 126, 449 N.E.2d 119 (Illinois jurisdiction notwithstanding California's payment of disability benefits).

TWA contends that under the "significant contacts" test, Illinois' jurisdiction here would violate the due process clause of the Constitution. TWA relies heavily on *McCluney v. Joseph Schlitz Brewing Co.* (8th Cir. 1981), 649 F.2d 578, *aff'd* (1981), 454 U.S. 1071, 70 L. Ed. 2d 607, 102 S. Ct. 624, where the 8th Circuit found the employment relationship's most significant contacts were in Wisconsin, and not in Missouri, where the original contract of hire had been made 19 years prior to the allegedly wrongful termination and the filing of a statutory action in Missouri. The *McCluney* court found that apart from the employee's post-termination move to Missouri, he had had no real contact with the State for five years. Schlitz closed its Kansas City plant in September 1973 and sold the plant in December 1973, nearly two years prior to the employee's termination. (*McCluney*, 649 F.2d at

582-83.) Thus, while the original contract of hire was in Missouri in 1956, the current employment contract, *i.e.*, involving the employee's promotion, was arranged in North Carolina and Wisconsin and was performed in Wisconsin. At the time of performance, the employee was a Wisconsin resident, and Schlitz was a Wisconsin corporation. The allegedly wrongful termination took place in Wisconsin, and the employee then returned to North Carolina, where he asked for a letter of service required for bringing suit under the Missouri statute. Only then did he move back to Missouri.

■ The present claims differ drastically from *McCluney*. In addition to the significant evidence already discussed, establishing that the contracts of hire and totality of arrangements for reemployment occurred in Illinois, both Lara and Williams retained personal contacts with Illinois. Lara's attorney made an offer of proof that Lara's family remained in Illinois; that he commuted back to Chicago weekly to be with them; that he retained his Illinois voter's registration; and that he retained all cultural activities in Illinois, including temple affiliations. Following his Missouri injury, Lara returned to Chicago for medical care for seven months until he was permitted to return to work in Missouri. At the time of the hearing, he was still commuting to Chicago weekly. Williams testified that his family remained in Chicago, where he visited them throughout his Pennsylvania employment. He retained an Illinois license plate on his car; an Illinois driver's license; Illinois car insurance; and returned to Illinois for medical care following his injury in Pennsylvania. He has lived in Illinois since the Pennsylvania injury. Unlike *McCluney*, the claimants here, and the employment relationships themselves, retained substantial connections to the State of Illinois. No violation of the due process clause exists in this case.

■ TWA also contends that a finding of Illinois jurisdiction enforces an Illinois police power statute extraterritorially on employment which is permanently and exclusively in other States, based on the mistaken finding that the Illinois contract of hire continued. TWA argues that workers' compensation legislation is an exercise of police power, and not part of the contract of employment. (See *Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, 106 N.E.2d 124.) We reject TWA's conclusions. The Illinois Workers' Compensation Act clearly was designed to have an extraterritorial effect. (*United Airlines*, 96 Ill. 2d 126, 449 N.E.2d 119.) While the constitutionality of the Act is based on the State's police power, and not on a contract theory (*Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, 106 N.E.2d 124), the State's interest is not strictly confined within its

physical boundaries and may depend upon some substantial connection between the State and the particular employment relationship. (*Arnold v. Industrial Comm'n* (1960), 21 Ill. 2d 57, 171 N.E.2d 26.) Our supreme court has carefully explained that any exclusive application of the theory of using an analysis similar to those governing questions concerning an individual's domicile is not consistent with the contractual basis of jurisdiction specified by our Workers' Compensation Act, and "any change therein will have to be legislatively mandated." *United Airlines*, 96 Ill. 2d 126, 131, 449 N.E.2d 119, 121.

■■ ■ TWA finally contends that the enforcement of Illinois statutes on employment exclusively located in other States places TWA in the position of conflicting demands between Illinois and the other States, and therefore, interferes with commerce among the States. In making that argument, TWA relies on *United Airlines, Inc. v. Illinois Commerce Comm'n* (1965), 32 Ill. 2d 516, 207 N.E.2d 433. TWA failed to raise this argument before the Commission, and thus, has waived it on appeal. (*Albert Mojonnier, Inc. v. Industrial Comm'n* (1968), 41 Ill. 2d 128, 242 N.E.2d 184.) Moreover, a State may regulate matters of local concern even though the regulation has some impact on interstate commerce where it safeguards an obvious State interest and the local interests at stake outweigh whatever national interest there might be in the prevention of the State restrictions. (*United Airlines, Inc. v. Illinois Commerce Comm'n* (1965), 32 Ill. 2d 516, 207 N.E.2d 433.) We have already held that Illinois retains substantial interests in the employment relationships here. TWA has presented no evidence in the record before us that the extraterritorial enforcement of the Illinois workers' compensation laws will unduly burden interstate commerce, and we will not look beyond this record. See *Chambers v. Industrial Comm'n* (1985), 139 Ill. App. 3d 550, 487 N.E.2d 1142.

Accordingly, the finding of Illinois jurisdiction is upheld. The judgment of the circuit court of Cook County in *Lara*, upholding the Commission's award, is affirmed. The judgment in *Williams*, confirming the Commission's award, except for the temporary total disability award, which was remanded for entry of an award consistent with the parties' stipulation (which direction Williams does not challenge or even address), is affirmed in its entirety.

Judgments affirmed; cause involving Williams is remanded to the Commission with directions.

BARRY, P.J., and WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.