FORD AEROSPACE AND COMMUNICATION SERVICES, INC., Appellee, v. THE INDUSTRIAL COMMISSION et al. (Humberto Valdez, Appellant).

First District (Industrial Commission Division)   No. 1—93—2147WC

Opinion filed May 20, 1994.

Cohn, Lambert, Ryan & Schneider, Ltd., of Chicago (David M. Barish, of counsel), for appellant.

Ridge, Condon & Saunders, of Chicago (James J. Kenney, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

On February 16, 1988, claimant, Humberto Valdez, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 et seq.). Therein, he alleged injuries to his lungs, left ankle, bowels, and back arising out of and in the course of his employment with Ford Aerospace and Communication Services, Inc. (the employer). The arbitrator found that there was jurisdiction over the case within Illinois. Claimant was awarded $246.72 per week for "111.66 [sic]"

weeks, pursuant to sections 8(d)(2) and 8(e) of the Act. (Ill. Rev. Stat. 1987, ch. 48, pars. 138.8(d)(2), (e).) On review, a majority of the Industrial Commission (Commission) affirmed and adopted the arbitrator's decision. The dissenting Commissioner argued that the majority's decision regarding jurisdiction was manifestly erroneous. The circuit court of Cook County set aside the decision of the Commission, finding that its decision regarding jurisdiction was against the manifest weight of the evidence. This timely appeal followed.

The only issue before this court is whether the Commission erred in determining that it had jurisdiction over the instant cause of action.

The following evidence was adduced at the arbitration hearing held on April 29, 1991. Claimant testified that he was in the United States Air Force from 1981 to 1986. He was an automatic tracking radar specialist. Sometime after his discharge, claimant sent his resume to the employer's Nevada office. During the first week of March 1987, claimant was contacted by Larry Shepherd, who apparently worked in the employer's Nevada personnel department. Over the telephone, Shepherd stated that, if claimant was interested in an "automatic tracking radar" position, he would send the latter an application. Claimant stated his interest in the position and, subsequently, received a packet including an application from Shepherd.

Claimant was living in Chicago at the time he completed the application and sent it back to Shepherd. The two-page application, which was signed by claimant on March 12, 1987, contained the following paragraph at the bottom of the second page.

"*I understand that I shall not become an employee of Ford Aerospace & Communications Corporation or any of its subsidiaries until I have signed an employment agreement with the final approval of the employer* and that such employment will be subject to verification of previous employment data provided in my application, and any related documents or resume; and will be contingent on my submitting to a physical examination and satisfying the physical qualifications for employment as determined by the Employer. I authorize educational institutions, employers, law enforcement authorities, organizations and individuals having relevant information concerning me to release such information and I release all concerned from any liability in connection therewith. I understand that an investigative report may be made which might include information concerning my character, general reputation, personal characteristics, and mode of living (whichever may be applicable) and that I can make a

written request of the consumer reporting agency for additional information as to the nature and scope of the report if one is made. I understand that if I am employed, evidence of U.S. citizenship or U.S. resident status and a birth certificate or other evidence of date of birth is required." (Emphasis added.)

Another document in the packet sent to claimant read in pertinent part:

"This is to confirm my acceptance ____ or rejection ____ of employment. I understand that I am hired for the Nellis O & M Program as a <u>Tech Fld A</u>, Requisition No. <u>432A</u>, at a salary of <u>$1722.93</u> per month.

*  *  *

I further understand that this offer is contingent upon my ability to satisfactorily complete a pre-employment Physical Examination and that the granting of a Security Clearance is a prerequisite for utilization of my services in the position for which I am being employed. In the event that a Security Clearance has not been granted within six months of my hire date, I understand that it will be necessary that I will be Released At Corporate Option on the expiration of that six month period. I will be eligible for reinstatement within two years after termination or within a period equal to the length of service, whichever is shorter.

I acknowledge that this offer constitutes the terms and conditions of employment for this position and there are no other arrangements, agreements, or understandings related thereto."

Claimant confirmed his acceptance of employment and signed this form on March 12, 1987. Apparently, the form was mailed to the employer's Nevada office along with claimant's application for employment. Also, claimant was examined by Dr. Juan Zabaleta, who completed the preemployment physical form sometime in the first half of March 1987. He decided not to mail this form to the employer due to his concern that it would not arrive in time. Thus, claimant took the physical examination form with him to Nevada.

Claimant arrived in Nevada on March 22, 1987, and reported to the employer on the following day. Claimant was grouped with four or five other individuals for a two-week orientation. On March 23, 1987, he signed a W-2 form, insurance forms and a request for reinstatement of security clearance. Claimant also signed an employment agreement, which is referred to in the above-cited portion of the employer's application. An identification photograph was also taken on this date.

Claimant stated that all those involved in the two-week orientation, including himself, had already been hired by the employer. He

was paid by the employer for the orientation period. After orientation, claimant began to work on the maintenance and operation of the employer's radar system.

It is undisputed that claimant was injured on November 9, 1987, while working for the employer. Pinned down by a malfunctioning antenna, he incurred extensive injuries to his left ankle, chest and bowels. After intensive treatment, claimant attempted to return to work in July 1988 but was physically unable to carry out the required tasks. After further rehabilitation, claimant again returned to work on January 6, 1989, and continued working until July 1989, when he voluntarily quit his job and returned to Illinois. He characterized the work for the employer as "outdoors" and "rugged" and, essentially, too difficult for him.

Upon claimant's return to Illinois, he enrolled in college and began working as a mechanical inspector for the Andrew Corporation, a job far less physically demanding than his job with the employer had been.

On cross-examination, claimant acknowledged that one of the forms he signed, upon arriving in Nevada, was an authorization of tax payments to the State of Nevada. After his accident, claimant filed a claim with Nevada's State Industrial Insurance System (SIIS), which handled workers' compensation claims. He received an unspecified amount of compensation and had various medical bills paid as a result of this claim. At one point, the SIIS referred claimant to Jean Hanna Clark Rehabilitation Center, which was located in Las Vegas.

Claimant acknowledged that he had signed the employment agreement in Nevada on March 23, 1987. Claimant conceded that he signed said agreement in the presence of a company witness, whose signature is on same.

In finding that there was jurisdiction in Illinois over the instant case, the arbitrator stated in relevant part:

> "[T]he Arbitrator finds that the [claimant] was hired within the State of Illinois. The Arbitrator relies on *United Airlines v. Industrial Comm'n*, 96 Ill. 2d 126 (1983). In that case our Supreme Court stated that a Contract of hire within the State of Illinois was sufficient to establish jurisdiction. The [claimant] is hired in the place where the last act necessary to give validity to the Contract occurs. [Citations.] In the instant case, the last act necessary to hire [claimant] occurred in the State of Illinois. [Claimant's] unrebutted testimony was that he was told to come to the State of Nevada for a job. [Claimant] testified that he was unaware of any variable and was under the impression that he had been hired. [The employer's] conduct is consistent with the [claimant's]

testimony. *** Within [claimant's] Exhibit #1 is a document signed by the [claimant] on March 12, 1987. The [claimant] was within the State of Illinois when he signed this document. The first sentence of this document states, 'This is to confirm my acceptance of employment.' The document went on to describe the exact position and pay scale. The document did note that employment was contingent upon completing a pre-employment physical and granting of security clearance. The [claimant] testified that he obtained a physical and passed that physical in the State of Illinois. He brought the proof with him to Nevada. This was because the [claimant] testified that the [Employer] wanted him to get to Nevada right away to start orientation. Accordingly, there was no time to send that document. The [claimant] testified that he would have been able to work for six months without security clearance. Accordingly, even though security clearance was required for a long term duration, it was not necessary to begin working. In fact, there is no testimony as to whether the [claimant] had ever received security clearance by the time the date of the accident had occurred. Nonetheless, the [claimant] was paid for his work beginning the first day that he arrived in Nevada. Accordingly, there was no variable nor any hiring process. Further, the [claimant] was reimbursed for his travel expenses in Nevada.

\* \* \*

The acts required of the [claimant] once he arrived in Nevada were merely administerial acts such as filling out tax forms and certain insurance documents."

As noted above, the majority confirmed and adopted the arbitrator's decision. Commissioner Gilgis' dissent contended, *inter alia*, that the majority ignored the language of the application for salaried employment which stated that claimant would not become an employee until he signed the employment agreement. The dissent further took issue with the arbitrator's view that the acts required of claimant upon his arrival in Nevada were "merely administrative."

The circuit court set aside the decision of the Commission, finding that the last acts necessary to validate the contract, namely, the signing of the employment agreement and the submission of the pre-employment physical examination form, occurred in Nevada, and, consequently, that is the State in which the hiring contract was completed.

Claimant argues that the acts by which he was hired, namely, the physical examination and signing of the acceptance form, were completed while he was still in Illinois. Claimant contends that the documents signed in Nevada were administrative in nature and not

necessary for contract formation. The employer responds that by the written agreement of the parties dated March 12, 1987, claimant's hiring was not completed until the employment agreement was signed in Las Vegas, Nevada. Further, the employer asserts that claimant's employment activities occurred entirely within Nevada and, as such, the contract's place of performance and execution are solely within Nevada.

■ The Act is designed to have extraterritorial effect. (*F&E Erection Co. v. Industrial Comm'n* (1987), 162 Ill. App. 3d 156, 168.) Employees covered by the Act include "[e]very person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois." Ill. Rev. Stat. 1987, ch. 48, par. 138.1(b)(2).

The place where the contract is made is the place where the last act necessary to give validity to the contract occurred. (*Youngstown Sheet & Tube Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 425, 433.) Whether a contract of hire was made in Illinois is a question of fact for the Commission, and its determination will not be overturned unless it is against the manifest weight of the evidence. *F&E Erection*, 162 Ill. App. 3d at 168.

■ As noted above, claimant signed an application for employment on March 12, 1987, and mailed it to the employer's Nevada personnel office. The application included the following language.

> "I understand that I shall not become an employee of [the employer] *until I have signed an employment agreement* with the final approval of the Employer." (Emphasis added.)

The employment agreement was signed by claimant on March 23, 1987, in the State of Nevada. Said agreement contains provisions related, *inter alia*, to inventions conceived or developed by the employee during his period of employment, disclosure of medical information to the employer's examining physician, termination and duration of employment, and the exclusivity of the terms contained in the employment agreement.

The Commission found that those functions performed by claimant in Nevada, including the signing of the employment agreement, were merely administerial in nature. We cannot agree.

It is readily apparent that the employment agreement's provisions reflect considerations which the employer finds essential in the hiring of employees. Said provisions define critical elements of the employment relationship. Moreover, as stated in the subject application for employment, claimant's hiring was contingent upon his signing of the employment agreement. If claimant had failed to

sign the employment agreement, it is highly improbable that he would have been hired by the employer. Thus, the signing of same cannot be termed an administerial function. Moreover, claimant's description of the employment agreement as merely a "loyalty oath" is not persuasive. Said agreement deals with far more complex and extensive matters than a simple loyalty oath.

Of the cases cited by the parties, *Energy Erectors, Ltd. v. Industrial Comm'n* (1992), 230 Ill. App. 3d 158, is the most factually similar to the appeal at bar. In *Energy Erectors*, the claimant, while living in Illinois, was invited by an official of the employer to work at a mine located in Virginia. Upon his arrival at Mavisdale, Virginia, claimant signed tax forms, signed the safety book and was apprised of general work rules. The employer's plant supervisor and general manager both testified that claimant had to come to the Virginia jobsite and fill out the necessary papers before he would be hired as an employee. The *Energy Erectors* court found that such evidence supported the circuit court's reversal of the Commission, which determined that it had jurisdiction to hear the claim. In the instant appeal, similar kinds of conditions to employment exist. Most importantly, before claimant was hired by the employer, he had to sign the employment agreement, which was only furnished to him in Nevada.

We find that the Commission's determination that there was jurisdiction within Illinois over this case is against the manifest weight of the evidence. Specifically, we determine that claimant's signing of the employment agreement was the last act necessary to give the subject contract validity. That act occurred in Nevada, which has jurisdiction over claimant's case.

For reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, SLATER, and RARICK, JJ., concur.