THOMAS CARROLL, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Consolidated Freightways, Appellee).

First District (Industrial Commission Division) No. 1—90—0417WC

Opinion filed October 26, 1990.—Rehearing denied December 20, 1990.

Krol, Bongiorno & Given, Ltd., of Chicago, for appellant.

Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Thomas Carroll, an Idaho resident, sought worker's compensation benefits in Illinois for injuries following a work accident suffered in the State of Washington while working for respondent, Consolidated Freightways. The arbitrator found Illinois jurisdiction under *United Airlines, Inc. v. Industrial Comm'n* (1983), 96 Ill. 2d 126, 449 N.E.2d 119, and awarded petitioner $520 per week for 30 weeks as temporary total disability benefits. The Industrial Commission affirmed the arbitrator's decision.

Relying on *United States Steel Corp., Gary Works v. Industrial Comm'n* (1987), 161 Ill. App. 3d 437, 510 N.E.2d 452, the circuit court reversed the Commission's decision, holding that the Commission's finding of Illinois jurisdiction was against the manifest weight of the evidence.

On appeal, petitioner contends that the trial court's denial of Illinois jurisdiction was against the manifest weight of the evidence and contrary to the law under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1(b)(2)).

Petitioner was hired by Consolidated on June 9, 1966, at the Chicago terminal as an over-the-road truck driver for the sleeper team operation. Petitioner was already a member of the Teamsters Union at the time of hiring. Petitioner completed Consolidated's routine hiring procedures, including filing an employment application, interview, photograph, and physical examination. Consolidated issued petitioner an employee identification number, and he completed a three-week training program at Consolidated's Akron, Ohio, facility. As an employee of the west sleeper board, petitioner drove to West Coast ter-

minals including Seattle, Portland, Los Angeles and Phoenix.

At the time petitioner was hired in 1966, he resided in Des Plaines, Illinois. Petitioner received Illinois workmen's compensation benefits in 1967 for a work-related injury which occurred in Indiana. Petitioner moved to Michigan in 1969, but continued to commute to work at the Chicago terminal. Petitioner has not resided in Illinois since 1969.

Consolidated and the union, of which petitioner was a member, instituted a massive change in driver operations in 1970 by converting the sleeper operation to a single-man relay system. As a result of this operational change, 219 of the 311 road driver positions in the Chicago terminal were eliminated. Petitioner was approximately number 150 to 160 on the driver's seniority list. Bids were awarded based on choice and seniority. Thus, while petitioner could have bid for the Chicago terminal, he was not guaranteed a position. Petitioner also testified that the possibility existed that he would have gone on layoff status if he did not have enough seniority. Following the change of operation, only 92 drivers remained in Chicago.

Petitioner testified that he was presented with a bid list to different Consolidated terminals and that he successfully bid out of the Chicago terminal to North Platte, Nebraska. Consolidated paid for petitioner's move from Michigan to Nebraska.

Petitioner testified that Consolidated guaranteed he would have a job when he arrived in Nebraska. He also remained a member of the union. Petitioner's employee number and seniority status remained the same, and he was not required to complete a new application, photograph or physical examination. As a Nebraska resident from 1971 through 1978, petitioner owned a home, voted, paid Nebraska income taxes, and held a valid Nebraska driver's license.

Consolidated instituted another change in operations in 1978, eliminating 66 of a total of 321 drivers in the Nebraska terminal. Petitioner testified that he could have either remained in Nebraska, or accepted a transfer to Minnesota, North Dakota or Idaho. Petitioner requested Idaho and testified that he was guaranteed a job when he reported to the Idaho terminal. Consolidated again paid for his move from Nebraska to Idaho. Similar to the Nebraska transfer, petitioner retained his employee identification number and seniority status, and was not required to complete a new job application, photograph, or physical examination.

The facts of petitioner's work injury are undisputed. Petitioner was injured on March 8, 1988, in Kent, Washington, while trying to unhook a converter dolly from a trailer, striking his head, neck and

back. Petitioner subsequently underwent neck surgery and physical therapy. Consolidated paid petitioner's medical bills and accepted petitioner's claim for temporary total disability benefits under Idaho law.

■■ Petitioner contends that the trial court erred when it found no basis for Illinois jurisdiction. The Act covers employees who are "in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois." (Ill. Rev. Stat. 1987, ch. 48, par. 138.1(b)(2).) The place where the last act necessary to give validity to the contract occurs is the place where the contract is made. *Youngstown Sheet & Tube Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 425, 404 N.E.2d 253.

Petitioner claims that because his contract of hire was executed in Illinois in 1966, Illinois jurisdiction is proper under a contract of hire theory. In addition, petitioner contends that because the only employment application he ever filed with Consolidated was completed in Illinois, his employee identification was issued in Illinois, and his seniority date with Consolidated began in 1966, his employment has been continuous and uninterrupted since that time.

Petitioner maintains that this case most closely resembles *United Airlines, Inc. v. Industrial Comm'n.* In that case, the court held that Illinois had jurisdiction over a claim where the employment contract was made in Illinois and the claimant had voluntarily transferred to the employer's facility in California prior to injury. Upon transferring, he did not undergo the same extensive hiring process as when originally hired in Illinois. His employee identification number remained the same, as did his seniority status; and if he failed to successfully complete a 90-day probation period in California, he had the right to resume his former duties in Illinois.

■■ ■ We find, however, that the facts in this claim are distinguishable from those in *United Airlines.* While the claimant in *United Airlines* and petitioner here were both hired in Illinois, the employment contract itself is but one factor the court weighs in determining whether Illinois jurisdiction is proper. We find that the trial court properly held the facts in this case most closely follow *United States Steel Corp., Gary Works v. Industrial Comm'n.*

In *United States Steel Corp.,* the court focused upon whether or not the transfer was voluntary. In that case, the court found there was no Illinois jurisdiction because the transfer was involuntary; the Illinois plant ceased operation, and the petitioner had no right or opportunity to resume his former duties in Illinois under any circumstances. See also *Youngstown Sheet & Tube Co. v. Industrial Comm'n,*

79 Ill. 2d 425, 404 N.E.2d 253 (no Illinois jurisdiction where Illinois plant permanently shut down, no temporary cessation of work); *cf. United Airlines*, 96 Ill. 2d 126, 449 N.E.2d 119 (Illinois jurisdiction where employee retained right to return to Chicago); *Trans World Airlines v. Industrial Comm'n* (1989), 191 Ill. App. 3d 856, 548 N.E.2d 367 (Illinois jurisdiction where employees retained rights of recall and TWA continued operating out of Chicago).

In this case, while Consolidated did not cease operation in Illinois, petitioner had no right of recall back to the Chicago terminal after he transferred to Nebraska. Moreover, petitioner testified that his seniority would not have allowed him to voluntarily transfer to a different location and displace another driver unless there was a national change of operations. Petitioner also testified that he never requested a transfer, nor was he ever given the right or opportunity to come back to Illinois. In addition, petitioner testified that an employee with greater seniority than he had was laid off at the Chicago terminal during the 1970 operational change. We conclude, therefore, that petitioner's transfer was not voluntary; rather, it was the result of the elimination of a substantial number of driver positions caused by the conversion of the sleeper team to a single-man relay team.

Another relevant factor involves the length of time between the date of injury and transfer. In this case, petitioner's injury occurred in 1988, approximately 18 years after his transfer to Nebraska, and 19 years since he last resided in Illinois.

In *United States Steel Corp.*, the court held there was no Illinois jurisdiction where the employee was injured 20 years after transfer. See also *Youngstown Sheet & Tube Co.*, 79 Ill. 2d 425, 404 N.E.2d 253 (no Illinois jurisdiction where employee injured 12 years after transfer). *Cf. Trans World Airlines v. Industrial Comm'n*, 191 Ill. App. 3d 856, 548 N.E.2d 367 (Illinois jurisdiction where one claimant was injured within two months, and the other claimant was injured within 16 months of transfer); *United Airlines*, 96 Ill. 2d 126, 449 N.E.2d 119 (Illinois jurisdiction where employee injured within two years of transfer).

Petitioner contends that because he was not required to fill out an application or undergo a physical examination when he arrived at the new jobsite, his employment has been continuous and uninterrupted. Petitioner correctly asserts that the court looks at such facts to determine continuity of employment. (See *Youngstown Sheet & Tube Co. v. Industrial Comm'n*, 79 Ill. 2d 425, 404 N.E.2d 253.) However, that is just one factor, and the court looks to the totality of arrangements for reemployment. *Youngstown Sheet & Tube Co. v. Industrial Comm'n*,

79 Ill. 2d 425, 404 N.E.2d 253; *United States Steel Corp. v. Industrial Comm'n*, 161 Ill. App. 3d 437, 510 N.E.2d 452.

We also note that petitioner has failed to maintain "significant contacts" in Illinois. Petitioner has not worked out of an Illinois terminal since 1970, nor has he lived here since 1969. Petitioner's only contacts with Illinois were visits to family members, which occurred on the average of every two years. Petitioner's last visit to Illinois prior to the hearing was approximately two years earlier upon the death of his mother.

Petitioner currently resides in Kellogg, Idaho, where he owns 32 acres of property; he also owns four city lots in Eneaville, Idaho. Petitioner has an Idaho driver's license and pays Idaho State income taxes.

In *McCluney v. Jos. Schlitz Brewing Co.* (8th Cir. 1981), 649 F.2d 578, *aff'd* (1981), 454 U.S. 1071, 70 L. Ed. 2d 607, 102 S. Ct. 624, the Eighth Circuit Court of Appeals found the employment relationship's most significant contacts were in Wisconsin, and not in Missouri, where the original contract of hire had been made 19 years prior to the allegedly wrongful termination and the filing of a statutory action in Missouri. The *McCluney* court found that apart from the employee's post-termination move to Missouri, he had no real contact with the State for five years. The court rejected McCluney's argument that the employment contract was fixed and immutable because it was originally entered into in Missouri.

The court's rationale in *McCluney* applies with equal force to petitioner's claim. The fact that petitioner was originally hired in Illinois in 1966 does not lead to an automatic finding of jurisdiction.

We conclude that the trial court correctly held there was no Illinois jurisdiction over petitioner's claim. As a result of that holding, we need not reach petitioner's additional contention that the court erred in computing his average weekly wage. For the foregoing reasons, the judgment of the circuit court of Cook County finding no Illinois jurisdiction is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH and LEWIS, JJ., concur.