UNITED AIRLINES, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*
(Virginia Rankins, Appellant.)

First District (Industrial Commission Division)   No. 1—92—2248WC

Opinion filed August 20, 1993.—Rehearing denied October 29, 1993.

Harold A. Katz, Jerome Schur, and Deborah E. Weiss, all of Katz, Friedman, Schur & Eagle, of Chicago, for appellant.

John H. Sandberg, of Wiedner & McAuliffe, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Virginia Rankins appeals from an order of the circuit court of Cook County reversing an award of the Illinois Industrial Commission (Commission) on the ground that the Commission lacked jurisdiction. Respondent employer is United Airlines. The Commission had affirmed the arbitrator's finding of 20% partial disability pursuant to section 8(d)(2) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(d)(2)).

On appeal, the only issue is whether the claimant had sufficient contacts with the State of Illinois to invoke jurisdiction under section 1(b)(2) of the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(b)(2).) We affirm the decision of the circuit court.

On April 23, 1985, claimant filed an application for adjustment of claim with the Commission, listing an address in California for herself and alleging that the date of accident was June 26, 1983. The location of accident or last exposure was listed as Chicago, Illinois. The issues in dispute between the parties included whether the Commission had jurisdiction over the claim and the nature and extent of the injury. Only facts pertaining to the jurisdiction issue raised on appeal will be presented here.

On June 26, 1983, while working in the galley of an aircraft, claimant slipped and fell. She broke a bone in her left foot, hit her head, and injured her lower back. The flight on which she was injured originated in San Francisco, California, and was destined for Eugene, Oregon. She reported the injury to the station manager in Oregon and her supervisor in San Francisco. All medical and hospital services for claimant's injuries were provided outside of Illinois, and claimant's medical bills were paid through respondent's San Francisco office. Following surgery, she worked intermittently until September 1987.

On each occasion she took off work she reported to the San Francisco office. She was paid workers' compensation benefits by respondent from the San Francisco office for this accidental injury, and she had filed a claim in California.

Claimant testified as to how she became an employee of respondent. While residing in Fresno, California, claimant submitted an application for an interview to become a flight attendant with respondent. Two weeks later, she received a letter from the employment office in San Francisco granting the interview and explaining how she would get a ticket to enable her to appear for the interview. She went for the interview on February 25, 1969. In this interview, she completed a "Stewardess Employment Application." Two hours into the interview, the interviewer told her she would make "a fine flight attendant" and that she would be sent to Chicago for training. If she completed the 5½-week training course, which included the required Federal Aviation Administration (FAA) emergency training and written examination, she would be hired. Following the interview, she was sent to respondent's medical facility in San Francisco for a physical examination. Claimant was not told that she was hired, but the interviewer emphasized her employment was contingent upon her completing the training course.

On April 8, 1969, claimant was sent to respondent's training facility in Illinois. The training schedule included route systems, service procedures, panic control, safety procedures for all of the aircraft, and "behavior" training. It also included one week of training specifically in FAA requirements, which concluded with a written examination. Claimant testified that her employment was contingent upon successfully completing the written FAA examination.

During attendance at the training school, the flight attendant candidates were held to a daily schedule. All the candidates lived in a training center dormitory on respondent's property. Attendees were required to attend training sessions eight hours per day, five days per week. Meals were provided in a dormitory cafeteria, and a curfew was imposed. Claimant was provided with $1 for each day in training. She was not handed any money while she was in training, but was paid $150 in her first regular paycheck after she got out of training.

Toward the end of the period of training, the candidates were allowed to bid for a "domicile" or location from which they desired to work. Chicago was one of the available domiciles. Bidding was done according to seniority within the class, based on age. Domiciles were tentatively awarded, contingent upon passing the written FAA exami-

nation. Claimant chose to be domiciled in New York City, and she was awarded this domicile just two days prior to graduation.

Claimant graduated from the flight attendant training school on May 13, 1969. On that date, she received a diploma, her ceremonial wings, and she was flown to her new domicile. Her uniform was purchased by her several days prior to graduation. On the day of graduation, she filled out a form for the credit union, and a form was completed to join the union. Rankins' diploma stated:

> *"This is to certify that* **VIRGINIA JOYCE RANKINS** HAS SATISFACTORILY COMPLETED THE PRESCRIBED TRAINING FOR **MAINLINER STEWARDESS** AND IS HEREBY COMMISSIONED TO PERFORM THE DUTIES PERTAINING THERETO FOR UNITED AIRLINES."

According to the claimant, a stewardess system seniority list was maintained in order to govern bidding on schedules, flight passes, vacation time, retirement, and insurance benefits. Seniority for purposes of this list was based upon the date of hire. Within a particular class, seniority was based on age. When claimant's name first appeared on a seniority list, her seniority date was listed as May 13, 1969. However, this seniority date was later changed to April 8, 1969, consistent with her first date of attendance at the training school. This change was reflected on her employment service record (UG-100). According to the testimony of another witness, Patricia Friend, another flight attendant employed by respondent and the president of the United Master Executive Council for the Association of Flight Attendants, the change resulted from an agreement between respondent and the flight attendant union in 1976, which agreement provided for a retroactive change in the governing seniority date.

Upon graduation, claimant reported to her assigned domicile in New York City and she completed a local address form which was maintained by respondent. She was not required to complete any additional paperwork for the union. The change of address form was the only document she had to complete when she arrived in New York City after training. The first day she flew as a flight attendant was May 17, 1969. The first day she received a paycheck was on June 1, 1969, covering a period from May 13 to May 31, 1969, plus the 5½ weeks in training. She established a residence in New York City, maintaining bank accounts in New York, and was paid through respondent's payroll office in New York, although the checks were drawn on an account in the Continental Bank in Illinois. She was also a member of the local flight attendants union out of New York. She continued her California driver's license. Claimant was considered to

be a "probationary" employee for six months. Her probationary status was terminated on November 13, 1969. Claimant admitted she had to complete training before becoming an employee, but denied being told she had to report to her domicile in order to become an employee.

In May 1972, claimant requested and received a transfer to a new domicile in Los Angeles, California. Her seniority date was unaffected by this change in domicile and she was not required to undergo another physical examination. Nor was claimant placed upon another probationary status when she was transferred. She continued working out of Los Angeles until May 1975, at which time she again requested a transfer to San Francisco, California. That transfer was granted.

At the time of her injury, June 26, 1983, claimant was domiciled out of San Francisco. At that time, she was a resident of California and had been living in California since 1972. She maintained a home in California, a California driver's license, a California mortgage and banking account. Claimant had never been "domiciled" in Illinois or injured in this State. Except for being paid from an Illinois bank, she had had no connection with Illinois since graduating from training school in 1969. Respondent was headquartered in Chicago. At the time of testifying, she was "domiciled" in Maryland, but was a resident of Utah. She commuted, living part-time in Maryland. She owned a house in Utah.

Both parties presented additional witnesses whose testimony focused on whether employment of a flight attendant by respondent occurred upon graduation in Illinois or upon reporting to the assigned domicile. This testimony need not be related in detail here, however, because we agree with the circuit court that the Commission's finding that the last act necessary to give validity to the contract of employment occurred in Illinois was not against the manifest weight of the evidence.

The arbitrator concluded there was jurisdiction of the claim in Illinois under the Act. The Commission affirmed the decision of the arbitrator. After reviewing the relevant evidence, the Commission found that the contract for hire was finalized at claimant's completion of and graduation from respondent's training program in Illinois. Therefore, the Commission also found that it had jurisdiction over this claim.

The circuit court, utilizing an analysis based on this court's decision in *Carroll v. Industrial Comm'n* (1990), 205 Ill. App. 3d 885, 563 N.E.2d 890, reversed, finding absence of jurisdiction under section 1(b)(2) of the Act. The circuit court's decision in this case relied on

the following facts: (1) neither claimant nor her family ever lived in Illinois; (2) claimant had not owned property, held a driver's license, or paid income taxes in Illinois; (3) her sole contact with Illinois was her 5½-week stay at respondent's training facility prior to her first assignment; (4) immediately after training was concluded, she was assigned to New York, pursuant to her wishes, and all transfers occurred subsequent to her establishing residence in New York and at claimant's request; (5) the accidental injury occurred 14 years after conclusion of training in Illinois, and claimant had not come to Illinois with an intent to remain since the accident; and (6) claimant filled out two applications in California, completed some employment-related paperwork in Illinois, and since 1969, all employment-related paperwork had been completed outside of Illinois. After noting that the last acts necessary to give validity to the contract were graduation and assignment, which occurred in Illinois, the circuit court relied on the absence of "significant contacts" by claimant with Illinois. The circuit court reasoned that, because claimant never worked or resided in Illinois, the question of "voluntary transfer" and the "right to return" were not relevant to this case. The circuit court judge placed significance on the length of time between claimant leaving Illinois and the date of injury, but stated that the place of completion of employment-related paperwork was of limited application to this case because that factor was customarily used to determine whether an employee had been "rehired" or a new employment contract had been entered into at a new location outside of Illinois.

Section 1(b)(2) of the Act provides:

"Every person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois, persons whose employment results in fatal or non-fatal injuries within the State of Illinois where the contract of hire is made outside of the State of Illinois, and persons whose employment is principally localized within the State of Illinois, regardless of the place of the accident or the place where the contract of hire was made, and including aliens, and minors who, for the purpose of this Act are considered the same and have the same power to contract, receive payments and give quittances therefor, as adult employees." (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(b)(2).)

The place where the contract for employment is made is the place where the last act necessary to give validity to the contract occurred.

(*Youngstown Sheet & Tube Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 425, 433, 404 N.E.2d 253, 257.) There is no question that the Act may be applied to claimants who are nonresidents of Illinois, who are injured outside of Illinois, and who have entered into a contract for hire in Illinois. *Beall Brothers Supply Co. v. Industrial Comm'n* (1930), 341 Ill. 193, 195-99, 173 N.E. 64, 65.

In *Beall Brothers*, a traveling salesman who was a resident of Colorado was injured in Colorado. His territory extended from Denver, Colorado, to the Pacific coast. He had been an employee of the Illinois company for about 28 years. When he was first employed, he was an Illinois resident and citizen. *Annual contracts* were made between the salesman and the company. The salesman was injured on July 25, 1926. In December 1925, a contract had been entered into between the parties in Alton, Illinois. The salesman had been a resident of Colorado "for several years" and resided in Denver because it had been agreed that was the reasonable place for him to best serve the company. (*Beall Brothers Supply Co.*, 341 Ill. at 194, 173 N.E. at 65.) The issue in *Beall Brothers*, however, was whether the Act was constitutional and not what factors should be considered in determining its applicability to a particular claim. In addition, *Beall Brothers* is distinguishable in that it involved annual contracts entered into in Illinois.

■ The question of whether an employee injured out-of-State is covered by the Illinois Act is a question of fact for the Commission. (*Trans World Airlines v. Industrial Comm'n* (1989), 191 Ill. App. 3d 856, 861, 548 N.E.2d 367, 370.) However, the Commission's finding of fact may be overturned if it is against the manifest weight of the evidence. (*United Airlines, Inc. v. Industrial Comm'n* (1983), 96 Ill. 2d 126, 132, 449 N.E.2d 119, 122.) Employment contracts are not fixed and immutable. (*Carroll*, 205 Ill. App. 3d at 890, 563 N.E.2d at 893, citing *McCluney v. Jos. Schlitz Brewing Co.* (8th Cir. 1981), 649 F.2d 578, *aff'd* (1981), 454 U.S. 1071, 70 L. Ed. 2d 607, 102 S. Ct. 624.) Therefore, the site of the contract for hire is not the exclusive test for determining the applicability of the Act, but is only one of the factors the Commission is to consider within the totality of the arrangements. *Carroll*, 205 Ill. App. 3d at 888, 563 N.E.2d at 892.

*Carroll* involved an over-the-road truck driver claimant who was hired by Consolidated Freightways at its Chicago terminal on June 9, 1966. The claimant in *Carroll* moved to Michigan in 1969, but continued to commute to work at the Chicago terminal. He had not resided in Illinois since 1969. In 1970, he bid out of the Chicago terminal to the North Platte, Nebraska, terminal. Consolidated Freightways paid

for his move from Michigan to Nebraska. His employee number and seniority status remained the same. He was not required to complete a new application, photograph, or physical examination. As a Nebraska resident from 1971 to 1978, he owned a home, voted, paid Nebraska income taxes, and had a valid Nebraska driver's license. In 1978, he was transferred to the Idaho terminal. Consolidated Freightways again paid for the move. Again, claimant retained his employee identification number and seniority status and was not required to complete a new job application, photograph, or physical examination. He was a resident of Idaho at the time he was injured on March 8, 1988. The injury occurred in Kent, Washington. *Carroll*, 205 Ill. App. 3d at 887, 563 N.E.2d at 891.

Most of the cases cited by claimant in this appeal were discussed in *Carroll*. There, the circuit court's determination that there was no jurisdiction in Illinois was upheld. This court decided that the hiring of claimant in Illinois in 1966 did not automatically lead to a finding of jurisdiction as this is only one factor to be considered. (*Carroll*, 205 Ill. App. 3d at 890, 563 N.E.2d at 893.) The factors relied on in *Carroll* were as follows:

> "We find, however, that the facts in this claim are distinguishable from those in *United Airlines*. While the claimant in *United Airlines* and petitioner here were both hired in Illinois, the employment contract itself is but one factor the court weighs in determining whether Illinois jurisdiction is proper. We find that the trial court properly held the facts in this case most closely follow *United States Steel Corp., Gary Works v. Industrial Comm'n* [(1987), 161 Ill. App. 3d 437, 510 N.E.2d 452].
>
> \*\*\*
>
> In this case, while Consolidated did not cease operation in Illinois, petitioner had no right of recall back to the Chicago terminal after he transferred to Nebraska. Moreover, petitioner testified that his seniority would not have allowed him to voluntarily transfer to a different location and displace another driver unless there was a national change of operations. Petitioner also testified that he never requested a transfer, nor was he ever given the right or opportunity to come back to Illinois. In addition, petitioner testified that an employee with greater seniority than he had was laid off at the Chicago terminal during the 1970 operational change. We conclude, therefore, that petitioner's transfer was not voluntary; rather, it was the result of the elimination of a substantial number of driver positions

caused by the conversion of the sleeper team to a single-man relay team.

Another relevant factor involves the length of time between the date of injury and transfer. In this case, petitioner's injury occurred in 1988, approximately 18 years after his transfer to Nebraska, and 19 years since he last resided in Illinois.

\*\*\*

Petitioner contends that because he was not required to fill out an application or undergo a physical examination when he arrived at the new jobsite, his employment has been continuous and uninterrupted. Petitioner correctly asserts that the court looks at such facts to determine continuity of employment. [Citation.] However, that is just one factor, and the court looks to the totality of arrangements for reemployment. [Citations.]

We also note that petitioner has failed to maintain 'significant contacts' in Illinois. Petitioner has not worked out of an Illinois terminal since 1970, nor has he lived here since 1969. Petitioner's only contacts with Illinois were visits to family members, which occurred on the average of every two years. Petitioner's last visit to Illinois prior to the hearing was approximately two years earlier upon the death of his mother.

Petitioner currently resides in Kellogg, Idaho, where he owns 32 acres of property; he also owns four city lots in Eneaville, Idaho. Petitioner has an Idaho driver's license and pays Idaho State income taxes." *Carroll*, 205 Ill. App. 3d at 888-90, 563 N.E.2d at 892-93.

Here, claimant notes that the arbitrator, Commission, and even the circuit court agreed that the contract for hire was made in Illinois. Such finding is not against the manifest weight of the evidence.

Claimant argues that the applicable law is that announced by the Illinois Supreme Court in *United Airlines* and *Youngstown Sheet & Tube*. However, the *Carroll* court considered both of those cases.

In *Youngstown Sheet & Tube*, the place-of-contract test was applied to a situation in which claimant was "laid off" at an Illinois plant. (*Youngstown Sheet & Tube*, 79 Ill. 2d at 427, 404 N.E.2d at 254.) This was not a temporary cessation of work as there was no expectation of eventual return. He had no right under the Illinois contract to placement in the company's Indiana plant, and he was "reemploy[ed]" in Indiana as a new employee, with a new employee identification number and no seniority. Illinois lacked jurisdiction. (*Youngstown Sheet & Tube*, 79 Ill. 2d at 433, 404 N.E.2d at 257.) In *United Airlines*, claimant had worked in Illinois for some four years,

his employment was uninterrupted and continuous, the contract of employment was entered into in Illinois, and he had the right to resume his former duties in Illinois. (*United Airlines*, 96 Ill. 2d at 129-32, 449 N.E.2d at 120-22.) The employee was transferred to California, where he was injured. The court refused to apply *Youngstown Sheet & Tube.* The court further noted that the fact an employee has been transferred does not operate to transfer the situs of the employment contract. *United Airlines*, 96 Ill. 2d at 131, 449 N.E.2d at 121.

In *Carroll*, the court considered *United Airlines* and found it distinguishable from that case. (*Carroll*, 205 Ill. App. 3d at 888, 563 N.E.2d at 892.) Instead, the case of *United States Steel Corp., Gary Works v. Industrial Comm'n* (1987), 161 Ill. App. 3d 437, 510 N.E.2d 452, was considered to be closer on the facts.

In *United States Steel*, the claimant was employed in Illinois until the plant closed permanently. An uninterrupted employment relationship was not established by the evidence. Claimant sought employment at a plant in Indiana, submitting a job application, undergoing a preemployment physical, and receiving a new employee identification number. He joined a different local union, completed Indiana tax documents, was placed in a position which was not comparable to that he had in Illinois, and lost all seniority. The accident occurred 20 years after leaving employment in Illinois. The fact that the employer gave him notice of a possible job in Indiana, where employment was not guaranteed, did not establish an uninterrupted employment relationship. Although this court's opinion referred to the difficulty of inferring that the change was not the result of a voluntary request (*United States Steel*, 161 Ill. App. 3d at 440, 510 N.E.2d at 454), *United States Steel* does not really involve consideration of whether a voluntary or involuntary "transfer" occurred. There was no transfer. The job ended in Illinois. He was reemployed in Indiana.

Claimant has not suggested any compelling reasons to retreat from *Carroll.* Claimant argues that, even if *Carroll* was correctly decided, the principles enunciated therein were not properly applied to this case by the circuit court.

■■ As already discussed, in *Carroll*, this court considered the following factors: (1) the site at which the contract was entered into; (2) the continuity of employment between the time of contract and the time of injury; (3) the voluntariness of the employee's transfer from Illinois; (4) the length of time between the employee's departure from Illinois and the date of injury; and (5) the significance of the employee's contacts with Illinois following departure from Illinois. In this case, the contract for employment was entered into in Illinois, and

that factor must be considered in favor of jurisdiction, although it is not the only factor to be considered. Claimant has been continuously employed by respondent since she left training. Although the circuit court stated that the completion of paperwork was not significant, the evidence indicated that claimant did not have to fill out a new application or undergo another physical examination so as to be "rehired" every time she changed domiciles.

As to the voluntariness of claimant's transfers, the trial court correctly determined the claimant never worked in Illinois and was, therefore, never transferred *from* Illinois. While some of the cases cited in *Carroll* discuss the fact that the "transfer" of the employee outside of Illinois was involuntary because the company closed or reduced operations in Illinois and the employee could not readily return to Illinois to work for the company, the importance of whether the transfer was voluntary or involuntary may be enhanced if the injury occurs within a relatively short time after the transfer.

In *Trans World Airlines* (191 Ill. App. 3d at 859-61, 548 N.E.2d at 369-70), there were two claimants. While working in Illinois, both employees were given the option of being laid off or transferring to another facility, retaining seniority, pensions, and vacation rights. There were no interviews or physical examinations, and each employee was guaranteed a job when he arrived. One was to report to the St. Louis facility on April 9, 1981. When he reported, he was put right to work. He was injured on June 3, 1981. He had exercised his recall rights and intended to transfer back to Chicago if anything opened up. The other employee began work in Pittsburgh on October 7, 1979, following a medical leave of absence. His family remained living in Chicago. He injured his back on February 18, 1981. After the injury, he moved back with his family. In *Trans World Airlines*, the determinative factors supporting a finding of jurisdiction were the creation of a contract in Illinois, the involuntariness of the transfer, the continuity of employment, and the fact the injuries occurred shortly after the transfer.

In light of this analysis, it would also seem appropriate to consider that the employee surrendered any right under the Act by voluntarily choosing another State in which to work when there was an opportunity to continue working in Illinois. Respondent in this case did not close its operations in Illinois, and claimant could have chosen to be stationed in Chicago. Indeed, five persons in claimant's class did elect to work out of Chicago. In any event, the record is clear that claimant did not request to be transferred to Illinois. She preferred to

live and work someplace else. This supports the determination that the Act is not available to her.

Another factor to be considered is the significance of claimant's contacts with Illinois. In this case, the claimant only came to Illinois for training preparatory to becoming an employee. The circuit court reasonably concluded that a short training period in Illinois, during which no injury occurred, ought not justify application of the Act to a person who otherwise has not maintained some contact with Illinois. The purpose of the Act is primarily to benefit the citizens of Illinois by enhancing the employment environment and, thereby, the economic environment of Illinois. (See Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.* (the title of the Act being, in part, "An Act to promote the general welfare of the people of this State by providing compensation for accidental injuries or death suffered in the course of employment within this State, and without this State where the contract of employment is made within this State ***").) Providing benefits to workers whose contacts with Illinois can be described as "tangential" does not enhance the employment and economic environments of Illinois or promote the general welfare of the people of this State.

There were 14 years between claimant's being hired in Illinois and her injury. During that time, she had no significant contact with Illinois.

Claimant contends that, if this court declines to overturn *Carroll*, the cause should be remanded to the Commission to give her the opportunity to present additional evidence. We disagree. The circuit court correctly applied the factors announced in *Carroll* and found that the Act did not apply to this claim and that the Commission had no jurisdiction to consider it. The issue of jurisdiction was raised before the Commission and claimant had an opportunity to present evidence. Indeed, claimant did present a great deal of evidence concerning her contacts with Illinois. The *Carroll* decision applied existing legal principles announced in previously decided cases. As a result, claimant's request to have the claim remanded for additional evidence is denied.

For the foregoing reasons, the order of the circuit court of Cook County reversing the decision of the Commission is affirmed.

Affirmed.

RAKOWSKI, WOODWARD, SLATER, and RARICK, JJ., concur.