Docket No. 100239.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

ROBERT C. MAHONEY, Appellee, v. THE INDUSTRIAL
COMMISSION *et al.* (United Airlines,
Appellant).

*Opinion filed January 20, 2006.*

JUSTICE KILBRIDE delivered the judgment of the court, with
opinion.

Chief Justice Thomas and Justices Freeman, McMorrow,
Fitzgerald, Garman, and Karmeier concurred in the judgment and
opinion.

## OPINION

In this worker's compensation case, we decide whether the site of
a contract of hire is the sole determining factor for applying the
Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.*
(West 2002)) to an employment injury sustained by a worker outside
this state. Robert Mahoney, who was hired in Illinois, sustained two
separate injuries while working for United Airlines (United) at its
Orlando, Florida, facility. He filed applications for adjustment of his
claims with the Illinois Industrial Commission (Commission), now
known as the Illinois Workers' Compensation Commission (see 820
ILCS 305/13 (West 2004)) seeking benefits under the Act. After the
claims were consolidated for hearing, an arbitrator denied benefits.

The Commission affirmed and adopted the arbitrator's decision. On judicial review, the circuit court of Cook County confirmed the Commission's decision. The appellate court reversed. 355 Ill. App. 3d 267.

On denial of rehearing, all of the justices filed a statement that the case involved a substantial question warranting consideration by this court. We allowed United's petition for leave to appeal. 177 Ill. 2d R. 315. We granted the Illinois Trial Lawyers Association leave to file an *amicus curiae* brief in support of Mahoney's position. 155 Ill. 2d R. 345. We now affirm the appellate court.

## BACKGROUND

The arbitrator's findings of fact are undisputed. Robert Mahoney was hired by United Airlines on January 6, 1969, to work as a ramp serviceman at O'Hare International Airport in Chicago, Illinois. He worked for United continuously in Illinois until 1993, when, following his divorce, he voluntarily applied for transfer to United's facility at Orlando International Airport in Orlando, Florida. Mahoney had the necessary seniority to choose among many locations throughout the United States.

There was no interruption between Mahoney's last day of work in Chicago and the beginning of his work the next day in Orlando. He has worked continuously in ramp service for United at Orlando until the present time.

Mahoney continues to reside in Orlando, where he purchased a home in 1994. He remarried in Florida. He has a Florida driver's license, pays taxes in Florida, and pays no taxes in Illinois. Although he has the right, he has never sought to relocate back to Illinois or to any other state.

Since his transfer, Mahoney has returned to Illinois approximately three times for training sessions and has also returned for family visits. When he returned to Illinois, he stayed in local hotels. He has not been injured in Illinois.

Mahoney sustained compensable injuries in Orlando, Florida, on March 19, 1999, and January 2, 2001. He received temporary total disability benefits consistent with the Florida Workers' Compensation Act, and medical treatment for his injuries was provided near his home in Orlando.

Mahoney filed applications for adjustment of his claims for both injuries in Illinois. On Mahoney's motion, the cases were consolidated for hearing. The arbitrator found no Illinois jurisdiction. The arbitrator noted that Mahoney relied exclusively on the fact that he was initially hired in Illinois as the basis for asserting Illinois jurisdiction. Rather than finding that fact solely determinative, the arbitrator also considered: (1) the continuity of employment between the time of contract and the time of injury; (2) whether the transfer was voluntary; (3) the length of time between the departure from Illinois and the injury; and (4) the significance of Mahoney's contacts with Illinois following his departure.

The arbitrator found Mahoney had no employment relationship with United in Illinois because neither the accident nor his resulting treatment occurred here and he voluntarily transferred to Florida from Illinois for personal reasons six years before the first accident. Accordingly, the arbitrator found no persuasive reason for the Commission to accept jurisdiction, and Mahoney's claims were denied.

The Commission affirmed and adopted the arbitrator's decision, finding the jurisdiction issue controlled by *Carroll v. Industrial Comm'n*, 205 Ill. App. 3d 885 (1990), and *United Airlines v. Industrial Comm'n*, 252 Ill. App. 3d 972 (1993) (hereinafter, *Rankins*). On judicial review, the circuit court confirmed the decision in a written order, finding it was not against the manifest weight of the evidence and not clearly erroneous.

The appellate court reversed. 355 Ill. App. 3d 267. The court held the plain language of the Act "clearly states that site of the contract for hire *is* the exclusive test for determining the applicability of the Act to persons whose employment is outside Illinois where the contract of hire is made within Illinois." (Emphasis in original.) 355 Ill. App. 3d at 269. The court noted that this court's decision in *Youngstown Sheet & Tube Co. v. Industrial Comm'n*, 79 Ill. 2d 425 (1980), established a bright-line rule for future courts. If the employment contract is made in Illinois, a claimant injured in another state is covered under the Act. Conversely, if the contract of hire is not made in Illinois, there is no coverage for injuries incurred outside the state. 355 Ill. App. 3d at 271.

The appellate court reasoned *United Airlines, Inc. v. Industrial*

*Comm'n*, 96 Ill. 2d 126 (1983) (hereinafter, *Walker*), involving a fact situation nearly identical to the present case, is directly apposite. The appellate court noted that in light of *Walker*, this court interpreted the Act to provide jurisdiction when the contract of hire was made in Illinois, even if the employee permanently transferred to another state and the injury occurred several years after the transfer. 355 Ill. App. 3d at 272. Therefore, the appellate court held that the "situs of the contract is the sole determinate of jurisdiction under the Act for a person whose employment is outside Illinois where the contract of hire is made within Illinois." 355 Ill. App. 3d at 274. The court "overruled" *Carroll* and *Rankins*, the appellate precedent relied on by the Commission, to the extent those cases deviated from its announced holding. 355 Ill. App. 3d at 274.

ANALYSIS

Section 2 of the Act imposes liability on employers for injuries to employees arising out of and in the course of employment. 820 ILCS 305/2 (West 2002). Section 1(b)(2) of the Act defines "employee" as:

"Every person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois, persons whose employment results in fatal or non-fatal injuries within the State of Illinois where the contract of hire is made outside of the State of Illinois, and persons whose employment is principally localized within the State of Illinois, regardless of the place of the accident or the place where the contract of hire was made ***." 820 ILCS 305/1(b)(2) (West 2002).

Section 1(b)(3) of the Act provides:

"An employee or his dependents under this Act who shall have a cause of action by reason of any injury, disablement or death arising out of and in the course of his employment may elect to pursue his remedy in the State where injured or disabled, or in the State where the contract of hire is made, or in the State where the employment is principally localized." 820 ILCS 305/1(b)(3) (West 2002).

Resolution of the issue presented in this appeal presents a

question of law dependent on construction of the preceding statutory language. Questions of statutory construction are subject to *de novo* review. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001).

In construing a statute, we are guided by familiar principles. The best indication of legislative intent is the plain and ordinary meaning of the statutory language. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). When the language is clear and unambiguous, the court must apply it as written without reading into it exceptions, limitations or conditions not expressed by the legislature. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999). We presume the General Assembly did not intend absurdity, inconvenience, or injustice. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). "The Workers' Compensation Act is to be interpreted liberally [citation] to effectuate its main purpose–providing financial protection for interruption or termination of a worker's earning power." *Sylvester*, 197 Ill. 2d at 232.

In *Union Bridge & Construction Co. v. Industrial Comm'n*, 287 Ill. 396 (1919), this court considered the question of whether the Act provided a remedy for the mother of a young construction worker hired in Illinois who was killed while working in Kentucky. The 1913 version of the Act, then in effect, defined the term "employee" without the express extraterritorial application provisions contained in the present statute. As the statutory definition of "employee" was of no assistance in deciding the question of Illinois jurisdiction, the court turned to the language of the Act's title, stating the express purpose of the Act was to provide " 'compensation for accidental injuries or deaths suffered in the course of employment *within this state*.' " (Emphasis added.) *Union Bridge*, 287 Ill. at 399, quoting Ill. Rev. Stat. 1913, ch. 48. Based on this language, the court denied compensation. Although acknowledging the remedial purpose of the Act required a liberal construction, the court noted there was no provision authorizing compensation for an injury occurring outside this state. *Union Bridge*, 287 Ill. at 400.

In 1925, the legislature amended both the title to the Act and the definition of "employee," expressly providing for the Act's application to injuries occurring outside the state when the contract for hire is made within Illinois. The constitutionality of the

amendment was challenged in *Beall Bros. Supply Co. v. Industrial Comm'n*, 341 Ill. 193 (1930). The amendment defined "employee" as:

> " 'every person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois.' " *Beall Bros.*, 341 Ill. at 195-96, quoting Ill. Rev. Stat. 1925, ch. 48, par. 142.

This court upheld the statute, holding that when persons contract under the Act, "they are conclusively presumed to have accepted its provisions and to be bound thereby," and that "[a] law effective in this State may create rights and liabilities arising from acts occurring outside of this State. [Citation.]" *Beall Bros.*, 341 Ill. at 199. Accordingly, the court upheld an award of compensation to a traveling salesman based in Denver, Colorado, who was injured in Colorado over a year after being hired in Illinois. *Beall Bros.*, 341 Ill. at 199.

In 1951, the legislature repealed the Act of 1913 and reenacted it, restructuring sections of the previous Act and incorporating the 1925 amendment providing for extraterritorial application when the contract of hire is made in Illinois. The title of the Act was:

> "An Act to promote the general welfare of the people of this State by providing compensation for accidental injuries or death suffered in the course of employment within this State, and without this State where the contract of employment is made within this State; providing for the enforcement and administering thereof, and a penalty for its violation, and repealing an Act therein named." 1951 Ill. Laws 1060, eff. July 9, 1951.

In 1975, the legislature again amended section 1(b)(2), broadening the definition of employment to include "employment principally localized in Illinois." The section has not since been amended.

Almost three decades after its passage, this court construed the 1951 version of section 1(b)(2) in *Youngstown Sheet & Tube Co. v. Industrial Comm'n*, 79 Ill. 2d 425 (1980). In *Youngstown*, the claimant was originally hired in Illinois, laid off, and rehired at a different facility in Indiana. A provision in the collective-bargaining

˘6˘

agreement between the United Steelworker's Union and the company allowed the claimant to retain his seniority because he was rehired by the company within two years. The claimant was, however, required to serve a probationary period following his rehiring. After his injury in Indiana, the claimant filed a workers' compensation claim in Illinois and received an award. On appeal, this court reversed.

The court applied the place-of-hire test, finding it apparent from a reading of section 1(b)(2) that "an out-of-State injury falls within the Act where the contract of employment was made in Illinois." *Youngstown*, 79 Ill. 2d at 430. The court concluded, however, that a new contract of employment was formed in Indiana following the termination of the employment relationship in Illinois, noting the claimant was interviewed for employment in Indiana, underwent a preemployment physical examination in Indiana, received a new employee identification number, joined a different local of the union, and was not placed in a position comparable to his Illinois employment. *Youngstown*, 79 Ill. 2d at 433. Thus, the court held Illinois lacked jurisdiction, observing that its "jurisdictional finding" was "particularly appropriate *** where the employee has not even worked in the State in which he is seeking relief for over 12 years." *Youngstown*, 79 Ill. 2d at 434. We note that the court's observation that the claimant had not worked in Illinois for 12 years was not dispositive. The decision was based solely on a determination that the claimant's contract of hire in Illinois was terminated, and a new contract of hire was then created in Indiana.

In 1981, this court upheld the constitutionality of the 1975 amendment in a case involving an employee hired in Illinois who worked in several states and sustained injuries resulting in his death in Michigan. *Goldblatt Brothers, Inc. v. Industrial Comm'n*, 86 Ill. 2d 141 (1981). The court rejected as without merit the employer's argument that section 1(b)(2) of the Act denied it equal protection of the law under the United States Constitution and the Illinois Constitution because the employee, if hired in Michigan and injured under the same circumstances, would be subject to Michigan law, and his survivors would receive much lower benefits. *Goldblatt Brothers*, 86 Ill. 2d at 144-45. The court noted that the claimant's widow was authorized to bring the action in either forum, and the fortuitous circumstance that the Illinois statute allowed a greater recovery did not defeat her right. *Goldblatt Brothers*, 86 Ill. 2d at 146.

In *Walker*, 96 Ill. 2d 126, the court upheld a Commission decision finding jurisdiction of the claims of a worker hired in Illinois in 1972, who voluntarily transferred to a permanent position in United's facility in San Francisco, California, in February 1976. Nearly eight months later, he sustained the first of three work-related injuries. Eight months after that, he sustained another injury and was injured again approximately two years later. He received temporary total disability benefits and filed applications for permanent compensation in California. While those applications were pending, he also filed applications for adjustment of his claims in Illinois. The Commission found Illinois jurisdiction, and United sought judicial review. The circuit court consolidated all three claims and reversed the Commission, finding that the "spirit of this court's decision" in *Youngstown* required a conclusion that the Commission lacked jurisdiction. *Walker*, 96 Ill. 2d at 129.

This court reversed the decision, holding the circuit court's reliance on *Youngstown* misplaced, because *Youngstown* is factually distinguishable. *Walker*, 96 Ill. 2d at 130. The court noted that the *Youngstown* claimant was permanently laid off from his position before learning, several months later, of an opening at his former employer's Indiana facility. He entered into a new contract of hire in Indiana, and his new employment relationship was governed by that contract, rather than his former employment contract in Illinois. *Walker*, 96 Ill. 2d at 131. Conversely, in *Walker*, the claimant's employment was continuous and uninterrupted at the time of his transfer to California. Therefore, the Commission's finding that the employment contract existing at the time of his injuries was made in Illinois was not against the manifest weight of the evidence. *Walker*, 96 Ill. 2d at 132.

Our court rejected United's argument urging application of a theory of jurisdiction suggested in a learned treatise by Professor Larson. According to Professor Larson, jurisdiction over compensation issues is present only in the forum where the employment relationship is "centered," and the status of the relationship should be determined by rules similar to those governing an individual's domicile. See 4 A. Larson, Workmen's Compensation, §§87.40 through 87.42 (1982). The court held application of that theory is inconsistent with the contractual basis of jurisdiction specified in the Act, and any change would require a legislative

mandate. *Walker*, 96 Ill. 2d at 131.

The dissent in *Walker*, authored by Justice Simon and joined by Chief Justice Ryan, relied principally on Professor Larson's theory. The dissent noted New Hampshire, whose workers' compensation statute has language nearly identical to the Illinois provision in question, has adopted the "employment relation" standard advocated by Professor Larson. *Walker*, 96 Ill. 2d at 136 (Simon, J., dissenting, joined by Ryan, C.J.).

Subsequently, the *Walker* majority holding was applied by our appellate court in *Trans World Airlines v. Industrial Comm'n*, 191 Ill. App. 3d 856 (1989). The court upheld compensation awards to two employees injured in Missouri following transfer from their employer's Illinois facility. The court observed, "Our supreme court has carefully explained that any exclusive application of the theory of using an analysis similar to those governing questions concerning an individual's domicile is not consistent with the contractual basis of jurisdiction specified by our Workers' Compensation Act, and 'any change therein will have to be legislatively mandated.' [Citation.]" *Trans World Airlines*, 191 Ill. App. 3d at 866.

Despite the clear direction given by this court in an unbroken line of cases beginning with *Beall Bros.* in 1930, and despite the application of our holding in *Walker* by the appellate court in *Trans World Airlines*, the appellate court departed from a strict application of the place-of-the-contract-of-hire standard in two cases: *Carroll v. Industrial Comm'n*, 205 Ill. App. 3d 885 (1990), and *Rankins*, 252 Ill. App. 3d 972.

In *Carroll*, the circuit court reversed a Commission award to a truck driver hired in Illinois, who lived and worked in other states under the same contract of employment, and who was injured in the State of Washington 19 years after his hiring in Illinois. On appeal, the claimant contended that his employment pursuant to his contract of hire in Illinois was continuous and uninterrupted because he was not required to fill out a new employment application or submit to a physical examination before reporting to each new jobsite. The appellate court acknowledged that those kinds of facts affect the continuity of employment, but are not exclusively determinative, and held that the court looks to "the totality of arrangements for reemployment. [Citations.]" *Carroll*, 205 Ill. App. 3d at 889-90.

The court then considered that the claimant's transfer was involuntary and without a right of recall to employment in Illinois; that the injury occurred 18 years after his transfer and 19 years after he last lived in Illinois; and that the employment relationship's most significant contacts were in states other than Illinois. The court then concluded that the claimant's original hiring in Illinois did not lead to an automatic finding of jurisdiction, and thus held the trial court correctly found no jurisdiction. *Carroll*, 205 Ill. App. 3d at 889-90.

In *Rankins*, the appellate court found the reasoning in *Carroll* dispositive of the issue of jurisdiction in the case of an airline flight attendant domiciled in San Francisco, California, who was injured in California. Her initial employment interview in 1969 was in California, where she was told she would be hired if she successfully completed a 5½-week training course in Chicago, Illinois. At the completion of her training, she was commissioned to perform the duties of a "mainliner stewardess" and, at her request, was assigned to duty in New York. She later transferred to California. Her employer maintained a seniority list governing bidding on schedules, flight passes, vacation, retirement, and insurance benefits. Her date of hire, for purposes of seniority, was the first date of her attendance at the training school.

Following her injury in 1983, she filed an application for adjustment of claim in Illinois. The Commission found that the contract for hire was finalized at the completion of the training program in Illinois and therefore found jurisdiction over the claim. *Rankins*, 252 Ill. App. 3d at 976. The circuit court reversed, relying on the analysis in *Carroll. Rankins*, 252 Ill. App. 3d at 976.

The appellate court acknowledged the holding in *Beall Bros.* that the Act may be applied to claimants hired in Illinois who are injured outside of Illinois. The court distinguished *Beall Bros.*, however, on the basis that it did not address what factors should be considered in determining the Act's applicability to a particular claim and further noted that *Beall Bros.* involved annual contracts entered into in Illinois. *Rankins*, 252 Ill. App. 3d at 978.

The court then held that the site of the contract for hire is not the exclusive test for determining the applicability of the Act, but "is only one of the factors the Commission is to consider within the totality of the arrangements. *Carroll*, 205 Ill. App. 3d at 888 \*\*\*." *Rankins*, 252

˘10˘

Ill. App. 3d at 978.

The appellate court acknowledged that the finding of the arbitrator, Commission and circuit court, determining that the contract of hire was made in Illinois, was not against the manifest weight of the evidence. *Rankins*, 252 Ill. App. 3d at 980. Further, the court acknowledged that the evidence indicated the claimant did not have to submit a new application or undergo another physical examination to be "rehired" each time she changed domiciles. Yet, despite acknowledging that the employment contract was made in Illinois and that the claimant's injury occurred while she was working under that contract, the court nevertheless found those facts not solely determinative of the jurisdiction issue. Instead, the court relied on the lapse of time between her hiring in Illinois and her work history in other jurisdictions, the fact that she did not continue to maintain significant contacts with Illinois following her initial training period, and the voluntariness of her transfer to California when she could have worked in Illinois. Accordingly, the court held the Commission lacked jurisdiction of the claim. *Rankins*, 252 Ill. App. 3d at 982-83.

Nonetheless, the appellate court here correctly noted that this court in *Youngstown* applied a bright-line test based on the plain language of the Act for future courts. "[I]f the employment contract was made in Illinois, a claimant injured while working in another state was covered under the Act. Conversely, if the contract for hire was not entered into in Illinois, then there was no coverage." 355 Ill. App. 3d at 271. United argues this is not a correct interpretation of *Youngstown* because that case clearly reviewed the "totality of the arrangements" for reemployment.

The *Youngstown* court indeed reviewed the "totality of the arrangements," but only in the context of determining whether the claimant continued employment under the initial contract of hire executed in Illinois. The threshold issue of determining the place of the initial contract of hire and the continuation of the contract is an entirely separate inquiry. Here, *United* concedes Mahoney was hired in Illinois and has not severed his employment contract. The *Youngstown* court's holding that there was no jurisdiction under the Act resulted from its determination that the claimant's old contract of hire ended with his layoff and that his injury occurred while working under a new contract of hire executed in Indiana. *Youngstown*, 79 Ill.

2d at 433. Accordingly, a review of the "totality of the arrangements" in this case leads only to the conclusion that Mahoney was still working under his original contract of hire at the time of his injuries.

United also urges reversal of the appellate court decision because it is inconsistent with the purpose of the Act and the legislative intent expressed in its title. While acknowledging the plain language of section 1(b)(2), United nevertheless argues that it does not exist in a vacuum. United notes that the title of the Act describes its application as "to promote the general welfare of the people of this State ***." 1951 Ill. Laws 1060, eff. July 9, 1951. The title of an act can provide guidance in interpreting the statute. *Illinois Bell Telephone Co. v. Ames*, 364 Ill. 362, 365 (1936). "To the extent that any *express* language in a statute contradicts a preamble, the statutory language controls." (Emphasis in original.) *Atkins v. Deere & Co.*, 177 Ill. 2d 222, 234 (1997).

In *Burtis v. Industrial Comm'n*, 275 Ill App. 3d 840 (1995), the court held that the title suggests that the purpose of the Act is to benefit the citizens of the State of Illinois. *Burtis*, 275 Ill. App. 3d at 843. The claimant in *Burtis*, although injured in New Jersey after a transfer to Tennessee, was, at the time of the Commission hearing, a resident of Illinois. The court thus distinguished *Carroll* and *Rankins* and found that, under those circumstances, the Illinois contract of hire was sufficient to confer jurisdiction under the Act. *Burtis*, 275 Ill. App. 3d at 843-44. United argues that a person who at one point lived and worked in Illinois but has since moved to a different state and has lived and worked there for many years, while maintaining no contact with Illinois, cannot be considered a citizen of Illinois.

We note that in *Walker* this court considered both the title of the Act and the express language of section 1(b)(2) in determining the claimant's injuries were within the jurisdictional scope of the Act. *Walker*, 96 Ill. 2d at 130. We do not consider the expression in the title of the Act of an intention to promote the general welfare of the people of this state to limit application of the plain, unambiguous language of section 1(b)(2). See *Atkins*, 177 Ill. 2d at 234.

United also argues that to allow nonresidents of Illinois who fail to maintain significant contact with this state to claim workers' compensation benefits here would unfairly burden Illinois. United suggests a parade of negative consequences likely to result, including

increased taxpayer cost due to a congested Industrial Commission docket, loss of potential employers who will fear high insurance premiums, and distorted statistics on work-related injuries, thus affecting promulgation of Illinois safety regulations and laws. Allowing Mahoney to file a claim in Illinois despite the availability of a forum in Florida encourages forum shopping for the jurisdiction with the most liberal benefits. The legislature, United asserts, could not have intended this result. Accordingly, United urges this court to adopt Professor Larson's employment relation analysis, as advocated by the dissenters in *Walker*, and confirm the application of the *Carroll-Rankins* standard by the Commission.

We decline United's invitation. The plain, unambiguous language of section 1(b)(2), as consistently interpreted by this court in an unbroken line of cases dating to 1930, confers jurisdiction to the Commission over injuries occurring outside Illinois when the contract of hire is made within Illinois. As long as the initial contract remains in force, the Commission retains jurisdiction. The section does not speak to lapse of time, failure to maintain significant contacts, or voluntariness of transfers, and imposes no requirement other than the existence of an employment contract in this state. Although Professor Larson's analysis is certainly reasonable, adoption of the standard he advocates is properly addressed by the legislature, not this court.

Accordingly, we hold that the place of the contract of hire is the sole determining factor for the existence of jurisdiction over employment injuries occurring outside this state. Mahoney's original contract of hire was still in effect when he was injured in Florida and, thus, he is entitled to pursue his claims in Illinois.


## CONCLUSION

The arbitrator, Commission, and the circuit court of Cook County erred in applying a broader standard than the situs of the employment contract in finding no jurisdiction. As Mahoney's injuries occurred while his employment was still governed by his initial Illinois contract of hire, he is entitled to assert his claims in Illinois. We therefore affirm the judgment of the appellate court.


*Appellate court judgment affirmed.*